Argued April 28, affirmed May 25, petition for rehearing
denied July 6, 1955

# OXLEY ET AL. v. LINNTON PLYWOOD
# ASSOCIATION

284 P. 2d 766

*George E. Birnie,* of Portland, argued the cause for appellant. With him on the brief was Thomas H. Ryan, of Portland.

*Wilber Henderson,* of Portland, argued the cause and filed a brief for respondents.

Before Tooze, A.C.J., and Rossman, Lusk, Latourette and Perry, Justices.

TOOZE, A.C.J.

This is an action to recover the sum of $25,000 for services performed, brought by John J. Oxley and Jay A. Williams, as plaintiffs, against Linnton Plywood Association, a cooperative association, as defendant. The case was tried to the court without the intervention of a jury. Judgment was entered in favor of plaintiffs for the sum of $25,000, and defendant appeals.

Defendant was organized in February, 1951, as a cooperative association, under the provisions of §§ 77-501 to 77-525, incl., OCLA (ORS 62.010 to 62.420, incl.), to engage in the manufacture and sale of veneer and plywood products, and has its office and plant located in Portland, Multnomah county, Oregon. By its articles of association, defendant is authorized to issue 400 shares of common stock, each share having a par value of $5,000, and 250 shares of preferred stock, each share having a par value of $2,500.

Defendant's common stock was to be sold only to persons who could qualify as members of the association, such qualifications being that they would be engaged in the production of defendant's products.

On February 24, 1951, defendant entered into a written agreement with plaintiffs, whereby plaintiffs were authorized *to secure members* of the association *and to sell them common stock,* one share to each, for the price of $5,000, payable according to the terms of defendant's subscription agreement. On September 28, 1951, a new contract in writing was entered into between defendant and plaintiffs, replacing the original agreement, and it is upon the provisions of this latter contract that the instant action is based. That contract reads as follows:

"Portland, Oregon
September 28, 1951

"Messrs. John J. Oxley and Jay Williams
302 S. W. 4th Avenue
Portland, Oregon

"Gentlemen:

"This will serve to confirm our agreement as follows:

"You have been previously authorized and you are hereby authorized *to seek out and procure applications for membership* with this association from persons who indicate interest in such. Also, you shall seek out and advise this association of the names of persons or firms which may desire to purchase from us one or more shares of our preferred stock.

"In each instance, *you shall submit to this association full information concerning the qualifications of persons who propose membership* and full information concerning the persons or firms which may be suitable as patrons of this association.

"In all instances, *you shall give to persons* or firms requesting information concerning this association *a copy of such prospectus which we may from time to time authorize you to use* in this connection, *and you shall comply with the requirements*

of the *Securities Act of 1933 and rules and regulations of the Securities & Exchange Commission.*

*"It is further understood that you will have no authority to sell either the common or preferred stock of this association or to admit persons to membership and that the full and exclusive power and authority to sell such stocks and to admit applicants to membership are reserved to and shall be exercised by only this association.*

*"As your fee for this service, this association will pay to you jointly a sum of money equal to five percentum of the sales price of the common and preferred stock which its board of directors authorizes for sale and has sold to stockholders. This fee shall be based upon previous sales of such stock, as well as sales to be made in the future. The fee is to be paid to you monthly.*

*"This will also serve to confirm our agreement that you will be paid nothing for services in connection with the securing of loans of money to this association and that any previous agreement relating to a fee for loan procuring services is hereby cancelled.*

*"This entirely supersedes and cancels any previous agreement between us pertaining to this subject matter. Your acceptance of the terms of this agreement is indicated by your signatures set forth below.*

> *"Respectfully,*
>
> Linnton Plywood Association
> By: [Sgd.] Morris J. Scholten
> Attest: [Sgd.] Kermit Parsons
> [Corporate Seal]

*"*Accepted:
[Sgd.] John J. Oxley
[Sgd.] Jay A. Williams*".* (Italics ours.)

It is to be observed that under the original agreement, plaintiffs were employed *to secure members* and

*to sell stock,* while under the contract of September 28, they are expressly *prohibited from admitting any persons to membership and from selling stock,* their services being specifically limited to *procuring applications for membership and submitting information* concerning persons or firms suitable as patrons of the association to whom preferred stock might be sold. For their services in the respects noted, plaintiffs are to be paid five per cent of the sales price of the common or preferred stock sold by defendant itself to the persons accepted for membership or approved as patrons. It is obvious, of course, that plaintiffs are not to be paid anything in connection with applications for membership procured by them or for information furnished as to prospective patrons which defendant association does not act upon favorably.

Acting pursuant to the terms of the contract, plaintiffs admittedly procured persons whose applications for membership were approved by defendant and to whom defendant sold shares of stock in the total sum of $1,250,000.00. It also is admitted that defendant paid to plaintiffs on account of such transactions the sum of $37,500. Moreover, it is admitted by defendant that the total amount accruing on such sales made by it is the sum of $62,500, leaving a balance unpaid of $25,000, for the recovery of which this action was commenced.

Defendant denies plaintiffs' right of recovery upon several grounds as set forth in its amended answer to plaintiffs' complaint. In its first further and separate defense, defendant alleges in part as follows:

"II.
"* * * That said shares of capital stock were offered to prospective purchasers through the

facilities of interstate commerce and the United States Mail service and were and are subject to the jurisdiction and purview of the Securities Act of 1933, Public Law No. 22, 73rd Congress, 15 U.S.C.A. Sec. 77, as amended, and herein referred to as the 'Act'. These securities of this defendant have been registered with the Securities and Exchange Commission pursuant to the requirements of the Act and that such registration became effective in September, 1951, and as amended by riders dated October 10, 1951, and October 17, 1951, was at all times herein mentioned in effect pursuant to the requirements of the Act.

## "III.

"That on or about the 28th day of September, 1951, defendant and plaintiffs entered into an agreement in writing by the terms of which defendant employed plaintiffs to secure purchasers of defendant's securities. Said agreement is attached to and made a part of Plaintiffs' complaint on file herein and designated as 'Exhibit B', and that among other provisions, it specifies that plaintiffs shall comply with the requirements of the Securities Act of 1933 and the rules and regulations of the Securities and Exchange Commission.

## "IV.

"a. Section 5 (b) (1) of the Act makes it unlawful for any person to carry or to cause to be carried in the United States mails or interstate commerce any *prospectus* pertaining to any security registered under the Act unless such prospectus meets the requirements of the Act.

"b. Section 12 of the act makes it unlawful for any person to sell a security through the facilities of interstate commerce or the U. S. Mails by means of a *prospectus or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary to render other statements not misleading.*

## "V.

"That after the effective registration of defendant's securities, plaintiffs transmitted and caused to be transmitted through the U. S. mails and in interstate commerce to each subscriber to defendant's securities and to each prospective subscriber thereto a prospectus which did not meet the requirements of the Act in that it violated the provisions of Section 12 thereof in *that said prospectus contained untrue statements of material facts and omitted to state material facts necessary to render other statements not misleading,* as follows:

"a. Said prospectus stated that defendant was the owner of timber lands in Lincoln County, Oregon, containing 30 million board feet of timber and that said timber land was located two miles from a highway; and that the cutting of said timber would necessitate the construction of a road over intervening property owned by the United States of America.

"In truth and fact, said timber land owned by defendant contained and contains not more than 21½ million board feet of timber; that the distance between the highway and the timber land is some seven miles and that the intervening land is owned by private interests.

"b. Said prospectus omitted to state that said timber land is comprised of four separate, noncontiguous and scattered parcels separated by lands owned by others and that roadways to each of such tracts must be constructed in order that the timber could be removed therefrom.

"c. Said prospectus stated that as a result of the rescission offer made by defendant to subscribers to its securities, the total number of shares submitted for rescission was 18 shares and that the total amount of money which was refunded or was to be refunded to those who accepted such rescission offer was $59,700.00.

"In truth and in fact, the total number of shares of defendant's capital stock submitted for rescission

was 24 shares and that the total amount of money defendant was required to refund was $102,200.00.

#### "VI.

"The plaintiffs knew or should have known that the said false statements contained in said prospectus were false and that said prospectus should have contained statements of the facts hereinabove alleged to have been wrongfully omitted.

#### "VII.

"Said prospectus was prepared by defendant and those portions of the prospectus which contained the false statements above alleged and which omitted to state the material facts necessary to render other statements not misleading as above alleged was prepared by defendant from information furnished to it by plaintiffs and that at the time said prospectus was prepared it was believed by defendant to contain a full and accurate description of all material facts as required by the provisions of the Act.

#### "VIII.

"That said agreement between plaintiffs and defendant could be performed by plaintiffs only with the use of a prospectus which complied with the requirements of the Act. That said prospectus violated the public policy declared by the Act and that the contract between the parties above described was and is void as contrary to public policy." (Italics ours.)

As a second further and separate defense, defendant in part alleges:

#### "II.

"That said contract contemplated the sale, attempt to sell, and solicitation for sale and subscriptions of defendant's securities, by plaintiff within the State of Oregon, and that in the course of performing said contract *plaintiffs sold securities,* issued by defendant, offered the same for sale, and

solicited sales for a commission, by plaintiffs within the State of Oregon.

## ·"III.

"That plaintiffs wrongfully and unlawfully failed to comply with Article III of the Oregon Securities Act pertaining to the registration of dealers and salesmen of securities.

## "IV.

"That because the plaintiffs did not comply with the Oregon law pertaining to registration of dealers and salesmen of securities, the said agreement was void." (Italics ours.)

George E. Birnie, an attorney at law of Portland, has acted as attorney for defendant at all times, beginning with its organization in February, 1951, and continuing up to the present time. At the outset he advised plaintiffs who promoted the organization of defendant and had a contract for the management of its business, that the proposed stock dealings were exempted from the provisions of the Federal Securities Act of 1933, and also from the provisions of Oregon's Blue Sky Law. However, shortly after plaintiffs commenced to sell the stock of defendant association pursuant to the agreement of February 24, plaintiff Oxley received a letter from one Newton, an investigator for the U. S. Securities and Exchange Commission, with headquarters in Seattle, Washington, inquiring of him by what authority he believed the securities of defendant association were exempt from the provisions of the Securities Act of 1933. This communication was delivered to Birnie, and Birnie went to Seattle to discuss the matter with Newton. After that discussion, although still of the opinion that the securities of defendant were not subject to the Federal Act, never-

theless, Birnie and plaintiffs decided that defendant should comply with its terms.

The first requisites in registering securities with the Securities and Exchange Commission are the filing by the issuer with the commission of a registration statement in triplicate and the payment of a filing fee. 15 USCA § 77f. The registration statement must contain the information, and be accompanied by the documents, specified in schedule A of section 77aa of Title 15, USCA. 15 USCA § 77g. The effective date of registration statements and amendments thereto is provided for in 15 USCA § 77h. The statute also provides that a prospectus shall contain the same statements made in the registration statement, but that it need not include certain documents. 15 USCA § 77j. In case any part of the registration statement, when such part becomes effective, contains an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security* is given a remedy at law or in equity to recover his damages on account thereof. 15 USCA § 77k. Any person who sells a security by the use of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements not misleading, and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, is made liable to the *purchaser* of the security for the recovery of the consideration paid therefor, upon the tender of such security, or for damages if he no longer owns the security. 15 USCA § 77l. It is made unlawful for any person in the sale of securities to employ any devise, scheme, or artifice

to defraud, or to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary to make the statement made not misleading. 15 USCA § 77q. Penalties by fine and imprisonment are provided for a violation of the Act. 15 USCA § 77x. There are many other provisions of the law which it is unnecessary to mention in this opinion.

Prior to the preparation and filing of the registration statement, defendant had purchased from J. M. Housley and Leonora M. Housley, his wife, 800 acres of timber lands located in Lincoln county, Oregon. The deed is dated June 22, 1951. The property conveyed is described in the deed by metes and bounds, and consists of and is designated as parcel 1, parcel 2, and parcel 3. Parcel 1 and parcel 2 are located in township 12 south of range 10 west of the Willamette meridian, parcel 1 being in § 35, and parcel 2 being in §§ 34, 35, and 36. Parcel 3 is located in §§ 34 and 35 of township 12 south of range 9 west of the Willamette meridian.

Before the purchase of these lands, Housley and his wife, upon request of plaintiff Oxley, acting for defendant, caused a cruise of the timber thereon to be made by one Rubidew, an employe of the Longview Fiber Company, of Longview, Washington. Rubidew made a complete report of his cruise in writing, delivering it to Housley, who, in turn, delivered it to Oxley. The cruise showed a total of slightly more than thirty million board feet of timber. The report of this cruise was submitted to and discussed by the board of directors of defendant association. Before this cruise was made, Housley had represented to the plaintiff Oxley that the land contained approximately twenty-one million five hundred thousand board feet of timber, and the price he asked for the land was based upon

that amount of timber at the rate of $15 per thousand feet stumpage, and he agreed to sell upon those terms without regard to the Rubidew cruise, which he agreed to have made. After fully discussing the matter of purchase and using the Rubidew cruise as its guide, the board of directors decided to and did purchase the land for defendant. The Rubidew report of the cruise became a part of the permanent files of defendant. It might also be stated that when discussing the matter of purchasing the land, the board of directors also had before it detailed maps showing the location of the timber lands.

Birnie prepared the registration statement, together with all the amendments thereto as requested by the Securities and Exchange Commission, and filed it with the commission. There was considerable correspondence between representatives of the commission and Birnie before the registration statement was finally completed to the satisfaction of the commission. Also, during the course of preparation of the statement, Birnie and Oxley made a trip to Washington, D. C., to confer directly with the officials of the commission. This trip was made during the forepart of August, 1951. On that occasion, the timber located in Lincoln county was discussed, and the commission requested that copies of the Rubidew cruise be sent it to be filed as a part of the documentary evidence in support of the registration statement, although it was not to be a part of the statement itself. Birnie forwarded these copies of the cruise report to the commission. Based upon the final draft of the registration statement as filed with the Securities and Exchange Commission, the commission ordered the registration of defendant's securities effective as of September 4, 1951.

Birnie also prepared the prospectus to be used in

connection with the sale of defendant's securities. As required by law, this prospectus contained a statement of the facts as set forth in the registration statement. Several hundred mimeographed copies of the prospectus were prepared under Birnie's direction and delivered to plaintiffs; in the performance of their services for defendant, plaintiffs made use of them, both in person and by mail.

It is only fair to state that while preparing the registration statement, Birnie had the assistance of plaintiff Oxley when such assistance was requested.

The prospectus as prepared by Birnie contained the following statements (also contained in the registration statement):

"Association has not yet determined the method it will use in transporting timber taken from its Lincoln County timber lands to its plant in Portland and it is investigating the most practicable and economical means of such transportation.

"Association is the owner of 800 acres, more or less, of timber land in Lincoln County, Oregon, *containing 30 million board feet of timber*. Of this quantity, approximately 40% is suitable for use by Association in the manufacture of plywood, and it is estimated the 10% is Grade 1 timber, 10% is Grade 2 and 20% is Grade 3. Grade 1 is the select grade used for facings or outer top layer of plywood. Grade 2 is used primarily for backing material for the plywood board and does not have the properties of fine finish as does Grade 1. Grade 3 can be used only for core or filling material in the inner portions of the plywood board and has no properties of fine finish or beauty. The term 'peeler log' is used in the trade to identify logs which may be used for Grade 1 and some of Grade 2 uses, whereas, the term 'peelable logs' is generally used to identify logs which may be used only for the inner plywood layers. This timber tract was

purchased for the full price of $322,000, on account of which the sum of $202,000 has been paid in cash and the balance paid by means of a promissory note from Association to the sellers for the balance of $120,000 without interest, payable $50,000 on or before July 25, 1951 and $70,000 on or before December 31, 1951. This promissory note is secured by a mortgage *on this timber tract* given by the Association to the sellers, who are J. M. Housley and Leonora M. Housley, husband and wife. *This timber land* is located 130 miles from Association's plant.

*"This timber tract is located two miles from a highway and the cutting of it will necessitate the construction of a roadway across intervening property, which is owned by the United States of America, from whom the Association believes that it can obtain a permit to build a roadway for logging purposes.*

"In relation to the needs of the Association, this stand of timber will supply its production requirements for not more than six months of capacity operation, and Association will thereafter be required to depend upon the open market for logs or upon the acquisition of additional timber tracts." (Italics ours.)

Birnie testified that when he prepared the registration statement and prospectus, he *assumed* the timber lands constituted but one tract of land rather than non-contiguous parcels of land, although the deed and title insurance policy examined by him contained detailed descriptions of the several properties, the descriptions showing on their face that the several parcels were not contiguous. He explained his failure to note this fact by asserting that he did not know the difference between township 12 south and range 10 west and township 12 south and range 9 west, nor did he know the size of nor the number of sections in an established

township, nor the location in a township of a given numbered section. It is apparent from the trial judge's remarks as shown in the record, and from his memorandum opinion, that he was not impressed by this testimony.

Upon the trial of this case there was introduced into evidence a true copy of the registration statement, a true copy of the prospectus, and also the original correspondence between Birnie and the Securities and Exchange Commission. The deed from the Housleys to defendant is also in evidence. The report of the Rubidew cruise was also admitted in evidence over defendant's objection.

In an attempt to prove the falsity of the statement in the prospectus respecting the amount of timber upon the lands in Lincoln county, defendant produced the testimony of one McFarland, an experienced timber cruiser who was employed by defendant to make a cruise of the timber on the lands in question during September, 1952. McFarland made what is called a 20 per cent cruise; it is a cruise also known as a four run cruise. Under this cruise the timber on 8 acres out of each 40 acres is actually cruised, or measured. *McFarland counted only those trees which were 16 inches or more in diameter breast high.* Sixteen inches was an arbitrary figure. He did not cruise the timber on the lands which was between 12 and 16 inches in diameter at the stump, although it is a matter of common knowledge that such timber has many uses and is in many cases treated as being merchantable. 54 CJS 696, Logs and Logging, § 17a. Noteworthy also is the fact that the prospectus does not speak of "merchantable timber"; it speaks only of timber—growing trees. It is obvious that McFarland's cruise was incomplete. His cruise report, based upon the cruise he made, shows

a total of twenty-two million five hundred thousand board feet of timber on the lands of defendant.

No other cruisers were called as witnesses, and the only cruise reports in evidence are those of Rubidew and McFarland, although there was testimony as to other cruises that had been made. As to the Rubidew cruise report, defendant contended that it was pure hearsay, and hence inadmissible, and that, therefore, the only evidence in the record as to the amount of timber on the lands is the testimony of McFarland and his cruise report. From this, defendant argues that the evidence conclusively establishes the fact that the statement in the prospectus that the lands contained thirty million board feet of timber is false. In passing, it might be stated that before he prepared the registration statement, Birnie had been advised that there had been one cruise made of the timber showing a total of twenty-one and one-half million board feet, yet he made no mention of this fact in either the registration statement or the prospectus.

■ Upon the conclusion of the trial, the trial judge made and entered of record findings of fact. These findings of fact have all the force and effect of a verdict by a jury, and are binding upon this court, unless we are able to say from the record that there is no substantial evidence to support them.

In addition to making a finding that the contract of September 28, 1951, between plaintiffs and defendant was duly entered into by the parties, the trial court made the following material findings of fact:

"III.

"That between February 24, 1951, and December 20, 1951, the plaintiffs sought out persons who subscribed for membership in defendant's association,

which applications were accepted by the Board of Directors of defendant, in the aggregate sum of $1,250,000.00; that five percentum thereof amounts to $62,500.00, and upon said sum the defendant paid to plaintiffs on account thereof $37,500.00, leaving due and owing from defendant to plaintiffs the full sum of $25,000.00; that although plaintiffs demanded of defendant payment thereof, the defendant has refused to pay the same; that by virtue of the aforesaid contract and plaintiffs' action as aforesaid, plaintiffs earned under said contract the full sum of $62,500.00;

## ''IV.

''That defendant, for the purpose of complying with the Securities Exchange Act of 1933, Public Law 72, 73rd Congress, as Amended, in connection with accepting subscribers to its membership, registered with the Securities Exchange Commission, and as an incident thereto, filed with the Securities Exchange Commission a prospectus signed by defendant *and no material information in said prospectus was false;*

## ''V.

''That the defendant, in connection with the procuring of memberships in defendant association, did not register its intention to procure memberships with the Corporation Commissioner under the Oregon Securities Act, and the plaintiffs did not register with the Corporation Commissioner under said Act.'' (Italics ours.)

In considering this matter, it should be kept in mind that this is not an action by a purchaser of defendant's securities against a person connected with the sale thereof, nor is it a proceeding instituted by the United States to enforce the provisions of the Securities Act. It is an action by persons who performed services for defendant under an express contract to recover the agreed compensation for those services,

services for which defendant has reaped and enjoyed the benefit. In this litigation defendant occupies the rather dubious position of asserting its own alleged wrongful conduct as the basis of its defense.

It must be remembered that the registration statement, as well as the prospectus, are the registration statement and prospectus of the defendant. The filings of the several documents with the Securities and Exchange Commission, including copies of the Rubidew cruise report, were the acts of defendant.

■ Without discussing the matter in detail, which we consider unnecessary for the purposes of this case, we express as our opinion that the services performed by plaintiffs under their contract with defendant were not those of a dealer, salesman, broker, or agent as defined in the Oregon Securities Law: §§ 80-101 to 80-201, incl., OCLA (ORS 59.010 to 59.700, incl.). Neither were plaintiffs engaged in the sale of securities within the meaning of either the Securities Act of 1933 or the Oregon Securities Law. There is nothing in either law that required plaintiffs to do anything personally as a condition precedent to their right to perform the particular services for the performance of which they were employed. They sold no securities. On the contrary, under their contract they were expressly prohibited from so doing. Defendant itself made the sales; plaintiffs merely furnished information as to prospects, prospects which defendant alone had the right to accept or reject.

We also are of the opinion that there is substantial evidence in the record to support the finding of the trial court that "no material information in said prospectus was false," insofar as the instant litigation is concerned. We will discuss a part but not all of such evidence. Defendant is a party to this action and is

subject to all the rules of evidence applicable to any party to litigation.

Assuming for the moment, but not deciding, that the Rubidew cruise report cannot be considered as substantive evidence in this case as to the amount of timber upon the lands in question, yet the statements of defendant contained in the registration statement and the prospectus, being its own statements, may be considered as evidence, being admissions against interest. The weight of the evidence is a matter exclusively for determination by the trial court.

"Admissions" have been defined as statements by a party or someone identified with him in legal interest of the existence of a fact which is relevant to the cause of his adversary. The term embraces any statement of fact made by a party which is against his interest or unfavorable to the conclusion for which he contends or inconsistent with the facts alleged by him. 31 CJS 1022, Evidence, § 270.

In 31 CJS 1023, Evidence, § 272a, the following rules are stated:

"Any statement, whether oral or written, made by or attributable to a party to an action, which constitutes an admission against interest, as defined supra § 270, and tends to establish or disprove any material fact in the case, is competent evidence against him in such action. *Evidence of an admission is not objectionable as hearsay;* indeed the rule under which such evidence is admitted is a well recognized exception to the hearsay rule, and proof of an admission by hearsay evidence does not depend for its admissibility on its conforming to any other exception to the hearsay rule, such as res gestae. The admissibility of extrajudicial admissions rests on the fact of inconsistency with the present position of the party who made them." (Italics ours.)

■ Birnie, as a witness, sought to charge the plaintiff Oxley with responsibility for the alleged untrue statements in the registration statement and prospectus, claiming that they were based entirely upon information furnished by Oxley. Oxley denied furnishing any erroneous information to Birnie for incorporation into the registration statement and prospectus. Birnie, as a witness, admitted that the alleged misstatement about the lands constituting but one tract of land was not based upon anything Oxley told him, but upon his own assumption. Upon disputed questions of fact in a law action tried to the court, it is the exclusive province of the trial judge to determine wherein lies the truth.

■ Moreover, we do not believe the statement as to the lands being "a timber tract" is a statement of a material fact within the meaning of the law, particularly in view of the fact that at the beginning of the discussion of the Lincoln county property, the statement is made by defendant as to "its Lincoln County timber *lands*." (Italics ours.) The important consideration was the number of acres of land owned, and particularly the amount of timber thereon that might be useful to defendant in the conduct of its business. Furthermore, the use of this timber formed but a minor part of its contemplated operation; as stated, the supply would last but six months, and with but 40 per cent of the total amount suitable for defendant's purposes.

■ Moreover, in determining what is meant by the term "timber tract" as used in the prospectus, the entire description of the property as stated must be considered. It will be observed that the timber is variously referred to as "timber land", "timber tract", and "stand of timber." The usual signification of the word "tract", *as applied to land,* is contiguity

of the parcels of property, but that is not always true. In *Provine v. Thornton,* 92 Miss 395, 401, 46 So 950, the court said: "In our view the *lands* involved in this litigation comprised only a single tract, and they therefore should have been sold as if they lay contiguously. We are satisfied that, within the purview of the law, the fact that eighty acres of the property were separated from the main body of the land in the conveyance did not make that eighty acres a separate tract." (Italics ours.) Webster gives as one of his definitions of "tract" the following: "An expanse; an area, large or small; specif., a region, or stretch not definitely bounded; as, a wooded *tract.*" In the prospectus, the subject matter of timber is thus introduced:

> "Association has not yet determined the method it will use in transporting timber taken from its Lincoln County timber *lands* to its plant in Portland * * *." (Italics ours.)

The use of the word "lands" clearly indicates that the prospectus was not referring alone to a single parcel or tract of land, but to all lands located in Lincoln county upon which there was growing timber owned by defendant. The remainder of the description refers entirely to all the timber on *these lands* in Lincoln county, a total of 800 acres, more or less. It is the "tract of timber" or "stand of timber" growing on these *lands* that is involved. The word "tract" and the word "stand", as used, add nothing whatever to the description, and convey no more meaning than would have been conveyed had they been omitted entirely; in other words, those terms are not controlling. The same is true as to the term "timber land". As used, that term refers to the same "timber *lands*" mentioned in the introductory part of the statement.

■ We now turn to the Rubidew report. Ordinarily,

its admission in evidence would be in violation of the rule against hearsay; it could not be considered as substantive evidence. However, under the facts and circumstances of this case, its admission in evidence was justified under well-recognized exceptions to the hearsay rule. We refer again to the fact that it was used by defendant in connection with its original purchase of the timber lands and was filed with its own records. It also was used by defendant in preparing the registration statement, and copies were filed with the Securities and Exchange Commission as evidence in support of the registration statement. By the use it made of the Rubidew report, defendant clearly adopted it as its own. Therefore, it forms an integral part of an admission against interest by the defendant. The applicable rule is well stated in McCormick on Evidence, p 525, § 246, as follows:

"One may expressly adopt another's statement as his own. That is an explicit admission like any other and is to be classed as an express admission."

In 4 Wigmore, Evidence 68, § 1069, the author states:

"Admissions * * * are merely the prior assertions of the party, which, being inconsistent with his present claim, serve now to discredit it by their discrepancy (ante, § 1048). How, then, can the utterances of any *other person than the party himself* serve for that purpose? * * *.

"Three different modes suggest themselves as possible:
"* * * * *

"(2) By *adoption* (§§ 1071-1075) the party may assent to a statement *already* uttered by another person, which thus becomes effectively the party's own admission."

In 4 Wigmore, Evidence 89, § 1073, it is said:

"The written statements of a *third person* may be so dealt with *by the party* that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements."

As to the types of documents coming within the rule, Wigmore mentions (1) documents seen; (2) documents found in possession; (3) documents of demand, received but not answered; and (4) *documents made use of.* As to the latter type, Wigmore says:

"(4) The party's *use of a document* made by a third person will frequently amount to an approval of its statements as correct, and thus it may be received against him as an admission by adoption." 4 Wigmore, Evidence 97, § 1073.

In the early Oregon case of *State v. Anderson,* 10 Or 448, 454, we stated:

"* * * But the admissibility of a party's own previous statements or declarations in respect to the subject in controversy, as evidence against him, does not in any manner depend upon the question whether they were for or against his interest at the time they were made, or afterwards. The opposite party has a right to introduce them if relevant and voluntarily made, no matter how they may stand or have stood in relation to the interest of the party making them."

Although not of particular importance to a decision in this case, nevertheless, it might be stated that no question is raised as to Rubidew's having made the cruise under discussion, nor as to the cruise report being his detailed statement of the cruise made. Defendant did attempt an attack upon the accuracy of the cruise, but no more. This attempt was made by the testimony of defendant's own expert witness.

■ Under the rules just discussed, the report of the Rubidew cruise was substantive evidence in the case, evidence for consideration of the trial court in connection with all the other evidence in the record. The trial court was not bound to find in conformity with the testimony of McFarland or his cruise report. A cruise is but an estimate; a report thereof amounts to no more than an expression of opinion on the part of the cruiser. The cruiser testifies as an expert witness, and his testimony, like that of all expert witnesses, is viewed with some suspicion. As to the two cruises, that of Rubidew and that of McFarland, it is evident that Rubidew had nobody's axe to grind when he made his cruise; as much cannot be said for McFarland, who evidently was employed to make the cruise for the purposes of this case, although we do not wish to be understood by this statement as questioning the good faith of the witness.

■ We are satisfied that there is substantial evidence in the record to support the findings of fact entered by the trial court, and, that being true, we are bound by them.

■ We deem it unnecessary to prolong this opinion by discussing the point urged upon us by defendant that plaintiffs' complaint fails to state a cause of action, and the further point that plaintiffs failed to prove their performance of the contract. There is no merit in either contention. Plaintiffs alleged and proved everything necessary to entitle them to a recovery in this case. It was unnecessary for them to allege in their complaint "that they had fully performed the contract on their part to be kept and performed", when the detailed facts they did allege showed performance by them of all conditions precedent to their right of recovery. Defendant contends that plain-

tiffs failed to prove that they had complied "with the provisions of the Federal Securities Act of 1933 and the rules and regulations of the Securities and Exchange Commission." As pointed out previously, there were no provisions of the Securities Act nor rules and regulations of the commission applying to the services performed by plaintiffs that required anything affirmatively to be done by plaintiffs as a condition to a right to perform their work.

We have no quarrel with the authorities cited and quoted from by defendant in its brief in support of its contentions. *Turner v. Jackson,* 139 Or 539, 4 P2d 925, 11 P2d 1048; *Lewis v. Siegman,* 135 Or 660, 296 P 51, 297 P 1118; *Shaw Wholesale Co. v. Hackbarth,* 102 Or 80, 198 P 908; *Davis Lumber Co. v. Coats Lumber Co.,* 85 Or 542, 167 P 507; *Ball v. Doud,* 26 Or 14, 37 P 70. But the decisions in those cases are not applicable to the situation now before the court.

It is obvious that the contract entered into between plaintiffs and defendant is a valid agreement; it does not in any manner violate public policy. Nor, under all the facts and circumstances of this case, and as between these plaintiffs and the defendant, did its performance in the manner it was performed render it void as being against public policy. In a nutshell, this is simply another case where a party has been "hoist with his own petard".

■ Before concluding, we must take note of another matter in connection with the trial of this case in the circuit court and its presentation on appeal. After the matter was finally submitted to us for decision, we learned from the record for the first time that Mr. Birnie, who argued the case orally in this court, was a material witness on the trial. In fact, the record discloses that it is largely upon his testimony that

defendant bases its claims. The record of the trial proceedings consists of 267 typewritten pages, and of this record the testimony of Mr. Birnie consumes 113 pages. The record also discloses that Mr. Birnie participated in the examination of other witnesses, although he had the active assistance of Mr. Thomas H. Ryan, able counsel, during the entire course of the trial. Mr. Ryan's name also appears on the briefs filed in this court. This situation compels us to again call attention to Canon 19 of the Canons of Professional Ethics of the American Bar Association. Canon 19 provides that when a lawyer is a witness for his client, except as to merely formal matters such as attestation or custody of an instrument or the like, he shall leave the trial of the case to other counsel. In *Newman v. Stover,* 187 Or 641, 657, 213 P2d 137, Mr. Justice BELT, speaking for the court, said:

> " * * * Canon 19, together with the other provisions of the Canons of Professional Ethics of the American Bar Association, has been commended to the profession by the Oregon State Bar, and the substance of Canon 19 was adopted as a rule of this court on December 29, 1949. Except for manifestly adequate reasons, there will be no relaxation of this rule in future cases. Counsel who have been material witnesses below will not be permitted to present the case here; and they should leave to other counsel the trial of the case in the Circuit Court. See in re Torstensen's Estate, 28 Wash. (2d) 837, 862, 184 P. (2d) 255."

Had we been advised of the fact that Mr. Birnie had been a material witness upon the trial of the case in the circuit court, he would not have been permitted to argue the matter in this court. However, we do not wish to discuss the matter further in this opinion. An opinion is being handed down today in the case of

*In re Estate of Felix Comegys,* in which Mr. Justice LUSK discusses this canon of professional ethics in some detail. It is unnecessary to repeat that discussion here.

We find no prejudicial error in the record. The judgment is affirmed.