Submitted on record and briefs January 5, reversed and remanded May 30, 2007

Susan LANE,
*Plaintiff-Appellant,*

*v.*

James S. FLOYD,
*Defendant-Respondent,*
*and*

THE FLOYD COMPANY,
dba First Oregon Properties,
*Defendant.*

Deschutes County Circuit Court
CV040075; A131620

159 P3d 1240

Lew E. Delo filed the brief for appellant.

James S. Floyd filed the brief *pro se*.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe,* Judges.

SERCOMBE, J.

---

* Sercombe, J., *vice* Brewer, C. J.

**SERCOMBE, J.**

Plaintiff filed a breach of contract claim against defendants James S. Floyd (Floyd) and The Floyd Company (Floyd Company or the company) based on an alleged oral agreement with both defendants to share their earnings from real estate commissions. Following summary judgment motions, the trial court determined that the company was liable under the agreement, but Floyd was not. Plaintiff appeals the judgment dismissing her claims against Floyd. She contends that the trial court erred in granting Floyd's summary judgment motion because his pleadings admitted his status as a party to the oral contract and because there were genuine issues of material fact about his contractual liability. We agree that genuine issues of material fact preclude judgment in Floyd's favor short of trial, but do not decide the conclusive effect of his pleadings. We accordingly reverse the judgment and remand.

On review of the trial court's grant of summary judgment to Floyd, we view the record in the light most favorable to plaintiff, the party opposing the summary judgment motion. *Robinson v. Lamb's Wilsonville Thriftway,* 332 Or 453, 461, 31 P3d 421 (2001). Cast in that light, the issue is whether the record shows that there is no genuine issue of material fact on Floyd's accountability to plaintiff as a party to the contract and that Floyd is entitled to a judgment dismissing plaintiff's claim against him as a matter of law. ORCP 47 C.[1]

Floyd Company was licensed to operate as a real estate broker. Floyd was employed by the company to be a designated real estate broker and to provide brokerage services in the name of the company. Floyd was also the chief

---

[1] ORCP 47 C governs motions for summary judgment. It allows

"judgment for the moving party if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

executive officer of the company and an owner of its stock. Plaintiff was a licensed real estate salesperson.[2]

In March 2001, Floyd entered into an oral contract with plaintiff. Under the contract, plaintiff was to be provided "desk services," *i.e.*, a desk and working space, phone, supplies, copying, use of a computer, and multiple listing services. Plaintiff could set her work hours and manner of performance and was to be paid "50% of all commissions on listings and sales [that she] brought in." In exchange, plaintiff was to pay an unspecified monthly amount for her costs to the company. Plaintiff claimed that she paid Floyd $100 each month for the seven months that the agreement remained in effect.

A few months after her association with defendants, plaintiff obtained a "listing referral," under which plaintiff referred her mother to Sunriver Realty (Sunriver) to assist in the sale of her mother's home. In return, Floyd Company and Sunriver signed an agreement, whereby Sunriver agreed to

---

[2] At the time of the formation of the oral contract, Oregon statutes regulated different categories of persons engaging in "professional real estate activity." ORS 696.020 (1999). We infer from the record that the company was licensed as a "real estate organization" under *former* ORS 696.025 (1999), which allowed a company to deal directly with others and denominate a separately licensed person as its "designated real estate broker." *See former* ORS 696.025(2), (3) (1999), *repealed by* Or Laws 2001, ch 300, §§ 84, 85; *former* ORS 696.080(1), (4) (1999), *repealed by* Or Laws 2001, ch 300, §§ 84, 85. Floyd admitted that he was licensed as a "designated real estate broker" for Floyd Company; that was also his designation when he signed the referral fee agreement in question. That license allowed Floyd to engage in professional real estate activity directly with others, but limited his activity to that activity "in the name of a real estate organization designating such person to be a designated real estate broker, and not otherwise." *Former* ORS 696.025(3); *see also former* ORS 696.080(4) (same). Plaintiff was licensed as a "real estate salesperson," which allowed her to engage in professional real estate activity "only as an agent of a real estate broker or real estate organization, and not otherwise." *Former* ORS 696.025(6). An exhibit to Floyd's summary judgment memorandum suggests that the license designated plaintiff as an employee of the company and not as an employee of Floyd. *Former* ORS 696.290(1) provided that "[n]o real estate salesperson * * * shall * * * accept compensation from[ ] any person other than the real estate broker under whom the salesperson * * * is licensed at the time * * *." ORS 696.290(1) (1999), *amended by* Or Laws 2001, ch 300, § 27. The parties did not brief, nor do we decide, whether those statutes affect the content of the oral contract and identification of the parties. The legislature repealed, amended, and renumbered statutes regulating activities of real estate brokers in 2001; those changes took effect on July 1, 2002, after the formation of the contract in this case, and would create a different context for a contemporary controversy.

pay the company a "referral fee" of 25 percent of the commission paid to Sunriver on the sale of the house. Apart from that arrangement, plaintiff was unsuccessful in attracting business for Floyd Company during their association.

Later that year, Floyd terminated plaintiff's contract because he believed she was unproductive and unwilling to "follow our procedures." About a year after plaintiff's contract was terminated, Sunriver sold the home and paid Floyd Company the $4,750 referral fee. Plaintiff found out about the sale and unsuccessfully sought to collect $2,375, or 50 percent of that fee, from Floyd and the company as due under the oral contract. Floyd and the company contended that the contract required the sharing of only real estate commissions paid during plaintiff's term of association.

Plaintiff initiated this action against Floyd alone for breach of the oral contract. The original complaint alleged an oral employment agreement with Floyd and claimed the right to share the referral fee. Floyd answered and pleaded an affirmative defense that the contract had been terminated by plaintiff's breach. Floyd contended that "Defendant and Plaintiff entered into an Independent Contractor's Agreement," which was terminated because of plaintiff's misconduct by wrongfully expending "Defendant's funds" and "causing detriment to Defendant's business and goodwill by representing his business as her personal place of business."

Subsequently, plaintiff filed an amended complaint, adding Floyd Company as a defendant. Floyd and the company filed a joint answer that included an affirmative defense of "failure of condition precedent," much like Floyd's earlier termination by breach defense. The pleading alleged that "Defendants and Plaintiff entered into an Independent Contractor's Agreement for Plaintiff to act as an independent real estate agent for Defendant" and that "Defendants performed the Agreement by providing Plaintiff office space, telephone use, office equipment and supplies." The affirmative defense stated that the agreement was terminated by defendants and that plaintiff's misconduct "at Defendants' business" had the effect of "discharging Defendants from any duties under the Agreement."

In addition, Floyd and the company counterclaimed for breach of the same oral contract, complaining of plaintiff's misconduct in using "Defendants' office equipment and supplies" and causing "detriment to Defendants' business and goodwill by representing Defendants' business as Plaintiff's personal place of business." Both defendants claimed to have been damaged by breach of the independent contractor agreement and asked to be jointly awarded $7,200 in damages. The counterclaim was withdrawn after the summary judgment proceedings concluded.

Plaintiff's claims were arbitrated pursuant to mandatory arbitration. ORS 36.400 to 36.425. Plaintiff and Floyd testified about the contract's formation, implementation, and termination. A client of Floyd Company testified that, based on his interactions with plaintiff, he thought she was working "for Mr. Floyd." The arbitrator found in favor of plaintiff's claim against the company, but concluded that Floyd was not personally liable under the contract. Defendants appealed to obtain a judicial resolution of the controversies. ORS 36.425(2)(a) (1999), *amended by* Or Laws 2003, ch 576, § 170 (appeal of arbitration decision and award under ORS 36.400 to 36.425 obtains "trial de novo of the action in the court on all issues of law and fact"). Plaintiff moved for summary judgment on her claim against the company and noted that the claim against Floyd involved disputed issues of fact. That motion was contested, but ultimately granted by the trial court.

Contemporaneously, Floyd sought summary judgment on the issue of whether he was a separate party to the contract and personally liable to plaintiff for part of the referral fee. His supporting affidavit stated that he did not hire plaintiff "in [his] individual capacity," but acted "on behalf of the corporation."

Plaintiff opposed Floyd's summary judgment motion, arguing that issues of fact existed regarding whether Floyd was a party to the contract and individually bound by its terms. Those factual disputes concerned circumstances existing at the time of contract formation and during its

course of performance. Plaintiff asserted that Floyd's affidavit was inconsistent with certain allegations in his pleadings. She averred in her affidavit:

> "When we first discussed the work contract, Mr. Floyd used both 'I' and 'we' when talking about what he and his company would agree to do as part of the contract. He said that he and his company would hire me as an independent contractor; let me set my own work hours and the way I did business; pay me 50% of all commissions on listings and sales I brought in; and provide 'desk services' (which include desk, phone, supplies, copying, multiple listing service and later the use of a computer and an office)."

Plaintiff also stated that, while she was working as a real estate salesperson, "I believed I was working for both James S. Floyd and his company, The Floyd Company"; that "when we did talk, Mr. Floyd continued to use both 'I' and 'we' when we talked about what he and his company wanted or suggested I do"; and that "Mr. Floyd never once told me that I was working only for his company or that he was acting only on behalf of his company." Finally, plaintiff stated that she paid Floyd personally $100 each month in cash for the desk services, for a total payment of $700. Plaintiff produced deposition testimony of Floyd admitting her payment of $100 each month.

Floyd countered that his pleadings were ambiguous. He also denied the contention that he personally hired plaintiff. Floyd produced business records of the company, showing deposits to the company's bank account that were attributable to plaintiff in the amount of $235. He contended that his deposition testimony was inaccurate and that any use of "I" and "we" in interactions with plaintiff was "inconclusive."

The trial court granted both summary judgment motions, concluding that there were no genuine issues of material fact on the company's liability to plaintiff and on Floyd's lack of accountability to her under the contract. On appeal, plaintiff reiterates her arguments to the trial court and assigns as error the granting of Floyd's summary judgment motion.[3]

---

[3] Floyd filed a *pro se* brief on appeal, reiterating some of the contentions made in the proceedings below. Floyd contends that plaintiff's counsel conceded that

To sustain the trial court's determination, ORCP 47 C requires that there be "no genuine issue of material fact" on the issue of Floyd's liability under the oral contract, so that he is "entitled to a judgment as a matter of law." No genuine issue of material fact exists when, "based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*

On review of the summary judgment record,[4] we conclude that an objectively reasonable juror could find that Floyd was bound, as an individual, to the terms of the agreement. The testimony of plaintiff and Floyd is contradictory on the identification of the parties to the contract. Plaintiff's affidavit states that "[Floyd] said that he and his company would hire me as an independent contractor * * *." Plaintiff also testified in the arbitration that "I worked for Jim Floyd" at the relevant time. Floyd's affidavit states to the contrary, that he did not hire plaintiff "in [his] individual capacity," but acted "on behalf of [company]." It is true that affidavits consisting of opinions as to liability, which are legal conclusions, are insufficient to defeat a summary judgment motion. *Spectra Novae, Ltd. v. Waker Associates, Inc.*, 140 Or App 54, 59, 914 P2d 693 (1996).[5] But the opposing testimony here is evidence

---

Floyd was not acting as an individual in participating in the contract, citing parts of the arbitration transcript. However, the arbitration transcript exhibit on file has certain pages of the testimony redacted, including the pages Floyd attached to his brief on that point. Thus, the redacted testimony was not part of the summary judgment record before the trial court and is not properly part of the record on appeal. We do not consider that testimony in conjunction with Floyd's arguments. *See* ORAP 3.05; ORAP 5.50.

[4] The relevant record on review consists of both the record made in the Floyd summary judgment proceedings and the contemporaneous record made because of plaintiff's summary judgment motion against the company, including the transcript of the arbitration hearing. Under ORCP 47 C, the summary judgment record consists of the "pleadings, depositions, affidavits, declarations and admissions on file." In *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 30 n 5, 147 P3d 1154 (2006), the court determined that provision was "broad enough to permit the court to consider not only the evidence submitted in support of and opposition to the summary judgment motion but also other pleadings and evidence 'on file.' " *See also Citibank South Dakota v. Santoro*, 210 Or App 344, 347, 150 P3d 429 (2006) ("When simultaneous cross-motions for summary judgment are filed on the same claim, the record on summary judgment consists of documents submitted in support of and in opposition to both motions.").

[5] All "supporting and opposing affidavits and declarations shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence,

of what was said and intended by Floyd at the time of contract formation; those factual issues are at the core of the dispute.

Second, there are issues of fact about whether plaintiff paid $100 each month to Floyd and whether all of that money was received by the company. Plaintiff stated in her affidavit that she made seven monthly cash payments to Floyd in that amount. Floyd's deposition testimony confirmed plaintiff's payment at this rate, although he later asserted that he was mistaken. The corporate ledger suggests that only $235 was deposited in the company's account and that $465 was kept by Floyd. Thus, an issue of fact exists about whether the consideration for the contract flowed to both Floyd and the company. If so, the mutual benefit to both Floyd and the company under the contract implies a corresponding mutual burden of obligation to plaintiff.

Third, there was testimony in the arbitration by a client of the company that plaintiff "was working for Mr. Floyd at that time." That assertion was made by a person not aligned with either side to the litigation and corroborates plaintiff's understanding of an agreement with Floyd, as well as with the company.

Finally, both Floyd and the company counterclaimed against plaintiff, seeking to jointly recover damages against plaintiff based on the same oral contract that plaintiff seeks to enforce against Floyd. Sauce for the goose is sauce for the gander. Floyd's assertion of rights against plaintiff implies a mutuality of obligation. It suggests that plaintiff can recover against Floyd under the same contract. It surely was not the case that Floyd was a party to the contract for the purpose of enforcing plaintiff's obligations, but not a party for the purpose of being liable to plaintiff. The counterclaim, seeking relief under the oral contract for Floyd and the company, is evidence that both entities were parties to and bound by the contract. *See Kahn v. Weldin,* 60 Or App 365, 376, 653 P2d 1268 (1982) ("admission in an inconsistent pleading is not

and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." ORCP 47 D.

binding on the party making the admission but is merely evidence of the fact admitted"). That evidence creates a genuine issue of material fact as to the parties to the contract.[6]

The resolution of those factual issues is the province of the factfinder at trial. It was error for the trial court to resolve them summarily.

Reversed and remanded.

---

[6] Because we agree with plaintiff that there are factual issues precluding summary judgment, we do not reach the issue of whether the allegations of the counterclaim are binding admissions or estop Floyd from denying his status as a party to the contract. *See Lea v. Farmers Ins. Co.*, 194 Or App 557, 562, 96 P3d 359 (2004) ("A judicial admission is a statement made by a party or his attorney for the purpose of dispensing with proof of a fact in issue. It is of the nature of an admission, plainly, that it be by intention an act of waiver, relating to the opponent's proof of fact, and not merely a statement of assertion or concession, made for some independent purpose." (Citations and internal quotation marks omitted.)); *see also Oxley v. Linnton Plywood Ass'n*, 205 Or 78, 98, 284 P2d 766 (1955) ("Admission" includes "any statement of fact made by a party which is against his interest or unfavorable to the conclusion for which he contends or [is] inconsistent with the facts alleged by him." (Citation omitted.)).