IN THE OREGON TAX COURT

## KAISER INTERNATIONAL CORPORATION
*v.*
## DEPARTMENT OF REVENUE
(TC 3370)

John F. Purcell, Miller, Nash, Wiener, Hager and Carlsen, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered September 20, 1993.

**CARL N. BYERS, Judge.**

Plaintiff appeals an assessment of personal property taxes on equipment purchased from the Port of Portland (Port). Plaintiff claims the property remained tax-exempt for the 1989 tax year.

In the early 1980's, a consortium of investors began construction of a coal terminal facility on Port property. The project was not completed and eventually the Port acquired title to the equipment. Plaintiff operates a dry-bulk terminal for the Port of Los Angeles (Los Angeles). The Los Angeles staff wanted the equipment for a new terminal. Plaintiff agreed to purchase the equipment from the Port and resell it to Los Angeles for a 10 percent commission. Plaintiff was

aware the Los Angeles governing body had to approve the purchase.

The Port's asking price was $7,000,000. Plaintiff negotiated and obtained a price of $2,400,000. The Port proposed a contract, providing for $100,000 down and payments of $90,000 per month, with no interest except on delinquent payments. The transaction was structured as an installment contract to give Los Angeles time to obtain financing approval. However, as of March 3, 1989, Los Angeles had not yet approved the purchase. Plaintiff had no use for the property other than to resell it to Los Angeles. To protect itself, plaintiff required paragraph 28 to be inserted in the contract. This paragraph gave plaintiff the right to cancel the contract within 45 days after execution. Although this right would cost plaintiff $25,000 if exercised, plaintiff anticipated receiving approval of the purchase by Los Angeles within the 45 days. The parties executed the contract on March 28, 1989.

For various reasons, there were delays in obtaining approval of the purchase. To protect plaintiff if Los Angeles did not approve the purchase, the parties amended the contract to extend the time during which plaintiff could cancel. Eventually, there were six such amendments, the last one extending the date to August 18, 1989. It is noteworthy that the last amendment was executed August 18, 1989, after the prior extension expired. Since Los Angeles approved the purchase August 10, 1989, the extension was executed after it became known that Los Angeles had approved the purchase.

The issue before the court is whether the property was tax-exempt on July 1, 1989. ORS 307.090[1] provides that property owned by the state or its political subdivisions is exempt from property taxation. However, ORS 307.100 provides:

> "Whenever real and personal property of the state or any institution or department thereof, or any county, municipal corporation or political subdivision of the state is the *subject of a contract of sale or other agreement* whereby on certain payments being made the legal title is or may be acquired by any person *and such person uses and possesses such property*

---

[1] All references to Oregon Revised Statutes are to the 1987 Replacement Part.

*or has the right of present use and possession,* then such property shall be considered, for all purposes of taxation, as the property of such person. No deed or bill of sale to such property shall be executed until all taxes and municipal charges are fully paid thereon." (Emphasis added.)

Plaintiff claims its contract with the Port is only an option which does not render the property taxable. However, an option is simply a contract to keep an offer open.

"An option to purchase or to sell is not itself the contract to purchase or to sell, and this is equally true of all transactions in which an option is sought or given." Richard A. Lord, *Williston on Contracts* § 5.16 at 718 (4th ed, 1990).

The contract between plaintiff and the Port is a bilateral contract of sale, not a unilateral option. The words "purchase" and "sale" in the contract are in the present tense. The contract remains in force and effect unless and until the buyer exercises its right to cancel. The court finds plaintiff's right to cancel is a condition subsequent, which is similar to that found in *Reynolds Aluminum v. Multnomah Co.*, 206 Or 602, 287 P2d 921 (1956).

Defendant points out that the issue does not turn on whether the contract is an option. The statute merely requires two conditions: (1) A contract of sale or other agreement which, when payments are made, will or may result in title being acquired; and (2) the person uses and possesses such property or has the right of present use and possession.

The court finds the contract is a contract of sale which, when payments are made, will result in legal title being acquired by plaintiff.

The only remaining question is whether plaintiff had the right of present use and possession of the property. Since the contract does not expressly address that issue, the court must construe the terms of the contract. *May v. Chicago Insurance Co.*, 260 Or 285, 490 P2d 150 (1971).

Paragraph 4 of the contract provides that the equipment may be removed when the purchase price has been paid. The buyer has discretion to allocate the payments between the various categories of equipment. Under paragraph 6, title remains with the Port until the equipment is paid for, except for the off-site equipment. The off-site equipment had an

agreed allocated value of $100,000. Title of that equipment passed to plaintiff upon payment of the $100,000 down payment. Under these provisions, it appears the parties intended plaintiff to obtain possession and use of the property only upon payment in full. Only as plaintiff obtained title to the property could it be removed from the premises.

Under paragraph 5, the buyer agrees to consolidate the unassembled equipment on the site within four months. The equipment must be removed from Port premises within 30 months of execution of the contract. Although paragraph 8 shifts the risk of loss to the buyer, the Port is obligated to use reasonable care in protecting and conserving the property while on the Port's premises and in the Port's warehouses. This suggests possession by the Port rather than by plaintiff. Also, the Port cannot impose storage charges on plaintiff until after the required performance date. Since the performance date is tied to payment in full, this suggests the Port had possession until plaintiff had fully paid for the property. The nature of the property requires assembly on a permanent installation in order to use it. Hence, it is reasonable to infer plaintiff obtained no right to use or possess the property until it was paid for.

A witness for the Port and a witness for plaintiff testified that the Port would not transfer title or possession until the purchase price was paid in full. This is consistent with the language of the contract. Based on the above, the court finds plaintiff was not entitled to the present use or possession of the on-site property as of July 1, 1989. Accordingly, such property remained exempt under ORS 307.090 and the assessment for personal property taxes against plaintiff cannot stand.

The court finds that plaintiff had title to and, therefore, a present right to use and possess the off-site equipment. Accordingly, the assessment as to off-site equipment is valid.

Defendant's Opinion and Order No. 90-0344 must be set aside. Costs to neither party.