Argued December 22, 1909, decided January 18. Rehearing denied February 15, 1910.

## COLLINS v. CREASON.

[106 Pac. 445.]

VENDOR AND PURCHASER—CONTRACTS—VESTING OF TITLE.

1. A contract for the sale of realty vests an equitable title to the premises in the purchaser, who is thereafter treated as the owner of the land, while the money to be paid as the consideration therefor is the property of the vendor.

.VENDOR AND PURCHASER—CONTRACTS—FORFEITURE.

2. A contract for the sale of realty, calling for payment by install-
ments, subject to forfeiture for nonpayment, included a half lot more
than was to be conveyed, which was then owned by a third person.
The vendor, securing title thereto orally, agreed to convey it for $150,
and the purchaser executed a note therefor. The purchaser paid install-
ments for a time and also paid the $150 note and then defaulted in
installments. *Held,* that the vendor could not declare a forfeiture for
nonpayment of installments without first tendering a deed and demanding
payment of the sum due.

VENDOR AND PURCHASER—RENTS AND PROFITS.

3. A vendor in a contract of sale calling for payment by installments,
subject to forfeiture for nonpayment, who collected from tenants under
the purchaser a sum in excess of the installments and taxes, is not
entitled to recover from the purchaser the taxes paid.

VENDOR AND PURCHASER—CONTRACTS—RIGHT OF VENDOR—IMPROVE-
      MENTS.

4. A vendor in a contract of sale of realty is not entitled to any
recompense for enhancing, without the purchaser's consent, the value
of the premises.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by George W. Collins against A. Creason
to enforce the specific performance of a contract to con-
vey real property.

The complaint states, in effect, that on July 30, 1902,
the parties subscribed to an agreement, under seal, for
the sale and conveyance by the defendant to the plaintiff
of lots 5 and 6 in block 9 in the city of Roseburg for
$850, of which sum $100 was then paid, the remainder
to bear interest from that date at the rate of five per
cent per annum, payable quarterly, commencing October
1, 1902, and the principal was to be discharged by install-
ments of $25 each, beginning January 1, 1903, and pay-
able every 90 days thereafter; that upon full liquidation
the defendant was to execute a warranty deed convey-
ing to the plaintiff a title free from all incumbrances;
and that the latter has performed his part of the agree-
ment, and demanded a deed from the defendant, who
declined and now refuses to comply therewith.

The answer denies the material averments of the com-
plaint and alleges that the plaintiff failed to pay the

installments of principal or interest as they severally matured, in consequence of which the defendant, exercising a privilege reserved, declared the contract terminated and the payments made on account thereof forfeited, and thereupon took possession of the premises; and that he paid the taxes imposed thereon and made improvements thereto amounting to $196.55.

The reply put in issue the averments of new matter in the answer, and upon trial the relief prayed for in the complaint was granted, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Fullerton & Orcutt,* with an oral argument by *Mr. Albert N. Orcutt.*

For respondent there was a brief with oral arguments by *Mr. Reuben W. Marsters* and *Mr. John A. Buchanan.*

Opinion by MR. CHIEF JUSTICE MOORE.

The contract, having been offered in evidence, shows that the consideration is $700; that the plaintiff was to pay the taxes apportioned to the premises; that upon a delinquency of any payment for a period of three months it should be lawful for the defendant to declare the agreement at an end, whereupon all money paid on account thereof should be deemed liquidated damages for the rent of the property, but, if the purchase price and interest were paid within the time specified, a deed to the land should thereupon be executed to the plaintiff.

Collins, as a witness in his own behalf, testified that, though the contract stated the purchase price to be $700, the premises described therein included a half lot more than was to have been conveyed, which smaller parcel of land was then owned by a third party; that the defendant, having secured the title to such tract, orally agreed to convey it for $150 to the plaintiff, who executed to him

a promissory note therefor, and thereafter paid such sum and the interest thereon, thus making the entire consideration $850, as alleged in the complaint, and not $700, as averred in the answer. This witness further stated that he gave the defendant $100 when the contract was signed; that he paid $150, as evidenced by the promissory note, and regularly discharged the installments of the principal as they severally matured from January 1, 1903, to April 1, 1904, inclusive, making $150; and that he also liquidated the partial payments of interest, to wit, $40.23, aggregating $440.23.

It appears from the evidence that no more payments were made on this contract until January 1, 1905, when tenants to whom the plaintiff had respectively leased a blacksmith shop and a barn on the premises paid to the defendant the rent. In the meantime, however, the defendant, taking advantage of the terms of the agreement, declared the contract terminated and the money obtained thereon forfeited, so that the payments thereafter made to him by the tenants, he asserted, had been received in consequence of their attornment. These lessees, prior to the bringing of this suit, paid to the defendant, as rent, sums of money sufficient to have liquidated the remainder of the purchase price due under the contract, if it were not abrogated. The plaintiff never consented to or acquiesced in the alleged cancellation of the agreement, nor in the confiscation of the money which he had paid thereon.

The defendant, as a witness in his own behalf, testified that on the day the contract in question was signed he received $100 from the plaintiff; but that, as the latter was then indebted to him on a negotiable instrument, the money so paid was credited thereon; that no promissory note was given by the plaintiff for any portion of the land, nor did he pay $150, or any part thereof, for an additional interest therein; and that the plaintiff paid

only five installments, aggregating only $125 of the principal, the last payment having been made January 1, 1904. A check for $25, drawn by the plaintiff April 4, 1904, in favor of the defendant and indorsed by him, was identified and offered in evidence, thus showing that an installment of the principal was paid after the time which he stated. The defendant did not identify any promissory note executed to him by the plaintiff upon which was indorsed the sum of $100 paid July 30, 1902.

It seems improbable that the defendant, having received a sum of money which he knew was paid on account of the purchase of the land, would give the plaintiff credit therefor on other indebtedness, if any then existed. To have done so without the plaintiff's consent, which it is not claimed was obtained, might have been prejudicial to him, for, after he had made many payments on the land, the defendant, by taking advantage of the clause providing for cancellation of the contract upon a three months' default of any installment, might have insisted on a breach of the agreement and terminated it, forfeiting all payments made thereunder, and subjecting Collins to unnecessary expense in maintaining his right in a suit instituted for that purpose.

Creason unquestionably erred in testifying in relation to the payment of the $25 which he certainly received on April 4, 1904, as is evidenced by the plaintiff's check for that sum. To say that he also made a mistake in stating that the $100 which he obtained as a first payment on the contract was credited on another account is as charitable a declaration of the matter as can reasonably be made. The plaintiff testified that he paid for the half lot of land, a description of which is included in the contract, $150 and interest thereon, evidenced by a promissory note, by hauling wood for the defendant, and offered in evidence a memorandum made by the latter on the back of a writing which stipulated for the delivery

of such fuel, showing the payment, with other items, of the sum so asserted to have been given. We conclude that the defendant, in testifying that he never received the $150 or any part thereof as an additional consideration for the land, made another mistake in his sworn declarations, and that the court properly found that the plaintiff paid on account of the purchase price $440.23, but made default after April, 1904. The question therefore to be considered is whether or not, in view of the purchase and full payment of the half lot, the defendant, by reason of the default, could upon notice, but without the plaintiff's consent, annul the contract and appropriate the payments that had been made, except by tendering to him a conveyance of the premises and demanding the remainder due.

1. By invoking the general maxim that equity regards as done what ought to be done, and applying the doctrine of equitable conversion, it follows that when a valid contract, for the sale of real property and the execution of a deed therefor, has been consummated, an equitable title to the premises becomes vested in the vendee, who thereafter is treated as the owner of the land, while the money which is to be paid as a consideration therefor is regarded as the property of the vendor; so that, upon the death of the purchaser, his heirs succeed in equity to the rights of their ancestor in the real property, and upon the death of the vendor his personal representative succeeds to his right to the purchase money remaining unpaid. Minor, Real Property, § 1284. *Sievers* v. *Brown,* 34 Or. 454 (56 Pac. 171: 45 L. R. A. 642). *Conner* v. *Banks,* 18 Ala. 42 (52 Am. Dec. 209).

2. In the case of an executory contract for the sale of land, where time is made the essence of the agreement, it would seem that the vendee had such an estate in the premises that he could not be deprived thereof, without his consent, except by a foreclosure or some other appro-

priate remedy, though the contract expressly provided for a termination thereof upon default and a confiscation of all previous payments; but, however, this may be, as compensation, and not forfeiture is a well-recognized principle of equity jurisprudence; the contract herein ought not to be terminated without at least tendering a proper deed of the premises and demanding payment of the sums due thereon, particularly so when the plaintiff paid the full consideration for the half lot, which he probably could have secured without cost by enforcing specific performance of the original contract. Any other rule might permit a vendor, after obtaining nearly all the purchase price, to declare a forfeiture for a trivial default, retain the money which had been paid, and assert his recovery of the equitable title.

3. The defendant did not tender a deed, and hence he is not in a condition to declare a forfeiture. It appears that he paid taxes imposed on the land from 1904 to 1907, inclusive, amounting to $38.86, which sum the plaintiff, by the terms of the contract, should have liquidated; but as the evidence tends to show that the defendant collected from the plaintiff's tenants a sum in excess of such taxes, aside from the full payment of the principal and interest due under the agreement, no allowance will be made on account of the money so paid to discharge the taxes.

4. The defendant also made some improvements to the property, after the alleged forfeiture was declared; but as he is not entitled to any recompense for enhancing the value of the premises, without the plaintiff's consent, he is not entitled to any compensation therefor.

It follows, from these considerations, that the decree should be affirmed, and it is so ordered.      AFFIRMED.