Submitted on briefs July 21; reversed September 22, 1931

In re Marchand's Guardianship

MARCHAND *v.* MARCHAND

(3 P. (2d) 128)

*Rutenic & Yaden*, of Klamath Falls, for appellant.
*A. L. Leavitt*, of Klamath Falls, for respondent.

CAMPBELL, J. The appellant and respondent intermarried about the year 1899 and ever since have been and now are husband and wife. That some time prior to the year 1922, they became owners as tenants by the entirety of Lots 1 and 2, in Block 2, Fairview addition to Klamath Falls; also an undivided half of Block 67, Nichols addition to Klamath Falls, in Klamath county, Oregon; also Lot 27 of Hall's Home Tract, in West Woodburn, in Marion county, Oregon. That on October 13, 1923, N. Marchand, the appellant, was duly appointed guardian of the person and estate of Fannie Marchand, the respondent, and thereupon qualified as such guardian. Thereafter the guardian filed his inventory and appraisement of said estate, showing his ward's interest in the property in Klamath county to be of the value of $500. No appraisement was made of the Woodburn property.

In the fall of 1922 Fannie Marchand was committed to the Oregon State Hospital for the insane at Salem and remained there until the spring of 1923, when she returned to Klamath Falls, where the parties had their home, for a short time and went back to the hospital, where she remained until September, 1928, when she again returned to her home at Klamath Falls and remained for a short time, and then went back to the hospital at Salem. She again returned to her home in Klamath Falls, and remained for a short time during the year 1929.

Shortly before his appointment as guardian, appellant and respondent joined in a mortgage for the sum of $1,500 to one Ruth Addison, on Lot 1, Block 2, Fairview addition. It appears that the money raised by this mortgage was to be, and was, used in the erection of a building on Lot 2 of the same block. On October 26, 1928, the guardian filed a petition, in the proper court, setting up the jurisdictional facts, showing that there was on said mortgaged lot a house which was the home of the parties hereto and was used by the appellant as his home during the absence of respondent; that it would be to the best interest of the owners of said lot to build an additional house thereon so as to produce an income to take care of the maintenance of said property and the principal and interest of the mortgage, and he asked that for that purpose and also to refund the $1,500 mortgage, he be authorized to mortgage said lot for the sum of $3,200. No objections having been made or filed against said petition, the county court made an order authorizing the loan. On September 6, 1929, the guardian filed his petition praying to be authorized to increase the above mortgage to the sum of $3,700. On October 11, 1928, the ward, Fannie Marchand, filed her answer and objected to any further incumbrance of said real estate. There is no record of any further action in respect to this petition.

On October 19, 1929, respondent filed her petition alleging that she no longer needed a guardian and prayed that the guardian be ordered to file a complete accounting and that he be discharged as such guardian. On December 6, 1929, the guardian filed a demurrer to this petition on the grounds, that the petition does not state facts sufficient to entitle petitioner to the relief prayed for. This demurrer does not ap-

pear to have been passed upon. On December 16, 1929, the guardian filed his answer to the petition for his removal and also made a complete accounting of his guardianship. On January 2, 1930, the ward filed her objections to the guardian's accounting, and on these issues the cause proceeded to trial. The county court rendered its decision which was not satisfactory to either the guardian or ward, and each appealed to the circuit court where the cause was tried anew on the record made in the county court. The court rendered a decision in favor of the ward, awarding her a judgment against the guardian and his bondsmen as guardian in the sum of $2,734.97, and costs and disbursements; the court also ordered that the ward's property be relieved from any of the outstanding indebtedness incurred in improving the property; further ordered the guardian to account for certain other property within sixty days; and dismissed the cross-appeal of the guardian. From this decree the guardian appeals.

At common law, tenancy by the entireties is distinguished by five unities: Unity of interest, title, time, possession and possessor.

"And therefore, if an estate in fee be given to a man and his wife, they are neither joint tenants nor tenants in common, for husband and wife, being considered as one person they cannot take the estate by moieties, but both are seised by the entirety per tout, et non per my." 2 Blackstone Commentaries (Lewis' Ed.) 648; 1 Jones Blackstone, 957; 1 Devlin on Real Estate, (Deeds) 3d Ed. 174; 4 Kents Commentaries, 415.

"A conveyance or devise to two persons who are husband and wife at the time the property vests in them, creates an estate by entirety. By reason of their legal unity by marriage, they together take the whole estate as one person. Neither has a separate

estate or interest in the land but each has the whole estate. Upon the death of one the entire estate and interest belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation. It is a sole and not a joint tenancy. They have no moieties. Each holds in entirety. They are one in law and their estate one and indivisible." 2 Thompson on Real Property, 939; 13 R. C. L. 1096.

With this definition in mind, let us proceed to a consideration of the decisions of this court.

"A conveyance to a husband and wife creates an estate by entirety." *Noblitt v. Beebe*, 23 Or. 4 (35 P. 248).

"A husband can convey an estate held by himself and wife as tenants by the entirety, and that such conveyance will vest the fee in the purchaser, if the husband survive the wife. And, as our statute has given the wife power and authority to sell and convey her property 'to the same extent and in the same manner that her husband can property belonging to him.' [Oregon Code 1930, § 33-211.] We think it clear she may convey an estate by the entirety with like effect as her husband." *Howell v. Folsom*, 38 Or. 184 (63 P. 116, 84 Am. St. Rep. 785); *Hayes v. Horton*, 46 Or. 597 (81 P. 386); *Ganoe v. Ohmart*, 121 Or. 116 (254 P. 203); *Heacock v. Loder*, 106 Or. 323 (211 P. 950); *Klorfine v. Cole*, 121 Or. 76 (252 P. 708, 254 P. 200).

██ The record shows that in May, 1923, appellant and respondent borrowed of Ruth Addison $1,500 and gave a mortgage on Lot 1, Block 2, of Fairview addition, as security. This money was borrowed to be used in the construction of a house on Lot 2 in the same block. All of this money seems to have come into the hands of N. Marchand. The house was accordingly built and thereafter the lot and house were sold to a Mr. Stevens. The guardian made a complete accounting of the money received for the property. It is true that many of the

items of expenditure on this property were made from this loan before the appointment of appellant as guardian, but equity and good conscience should allow the reasonable expenditure in making the property salable. While an estate by the entirety exists the husband and wife have an equal interest and when they voluntarily join in its disposal, the net proceeds should be equally divided.

■ As a legal proposition the guardian had the right on a proper showing, to sell his ward's interest in the real property. As a practical problem his ward's interest in nonincome-bearing property, if sold without the husband joining in the sale, would be valueless because of the difference of the life expectancy. The ward (wife) is seventy-seven years old and the guardian (husband) is fifty-seven years old.

The only property sold by the guardian was Lot 2, Block 2, Fairview addition, and Lot 2, Block 67, Nichols addition. This was property that belonged to the estate by the entirety. There is no evidence that the guardian invested any of his ward's funds in any other property.

■ The probate court, in a proceeding for an accounting against a guardian, has no jurisdiction to enter a judgment against the guardian's bondsmen.

The guardian's account shows receipts from property belonging to the entirety estate, as follows:

May 28, 1923, from loan on Lot 1, Block 2 ............$1,500  
Jan. 28, 1924, from sale of Lot 2, Block 2 ............ 4,075  
Feb. 9, 1924, from sale of Lot A, Block 64,  
    Nichols addition ........................................ 350  
Dec. 12, 1928, from loan on Lot 2, Block 2 ............ 3,200  

    Total ...............................................................$9,125

His legitimate disbursements were:

| | |
|---|---:|
| Construction of house on Lot 2, Block 2 | $3,270.11 |
| Maintenance of Lot 1, Block 2, exclusive of taxes | 592.56 |
| Erecting new house on Lot 1, Block 2 | 1,781.97 |
| Refunding $1,500 loan with interest and expenses | 2,230.12 |
| Interest paid on $3,200 loan | 128.00 |
| Total | $8,002.76 |
| Balance | $1,122.24 |
| One-half to the ward | 561.12 |
| Expense of guardianship | 271.35 |
| Balance due ward | $ 289.77 |

■■ The question raised by the ward of allowance of certain expenses attached to the management of the ward's estate is untenable. In such management the guardian is entitled to reasonable, necessary expenses for brokerage on loans, commissions on sale of property, filing fees, attorneys fees, etc. There is no contention, nor is there any evidence in the record showing that the fees claimed by the guardian for such items are unreasonable or unnecessary. The guardian is required to exercise the care, prudence and diligence that a reasonable person would use in his own affairs. It would serve no useful purpose to consider the guardian's account item by item. In our judgment, the items of expense, as shown in his account, are fully justified. The evidence does not warrant his removal as guardian, nor is the evidence sufficient to show that ward has no further need of a guardian.

■ We cannot consider the question of the increase of loan asked for in the guardian's petition of Septem-

ber 6, 1929, as neither the county court nor circuit court has passed upon that matter. This court, in such a proceeding, has only jurisdiction to review.

It is unnecessary to pass upon the items of expense outstanding at this time. Those items are matters to be disposed of on a petition to sell, or mortgage the ward's property for the purpose of paying them or on a final accounting. They may, or may not be allowed by the proper court on such hearing.

The decree of the circuit court is reversed and one entered approving the account of the guardian as herein set out, and the matter remanded to the lower court for such further proceedings as may be necessary or convenient, not inconsistent with this opinion. Neither party is to recover costs in this court.