Argued September 17, 1959, affirmed February 17, petition for
rehearing denied April 5, 1960

# PANUSHKA *v.* PANUSHKA

349 P. 2d 450

*Allen G. Fletcher,* Portland, argued the cause for appellant. With him on the briefs was Dale Jacobs, Oregon City.

*Peter A. Schwabe,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and KING, Justices.

WARNER, J.

The plaintiff, Edward William Panushka, is the son of Edward P. Panushka, deceased, by a former marriage. His father died intestate, leaving an estate subject to administration in Clackamas county, Oregon.

Bess L. Panushka is the widow of the decedent and appears herein both individually and as the ad-

ministratrix of her late husband's estate. We will refer to her in her personal capacity as the defendant.

The facts are simple and not disputed. The defendant and decedent were married in 1931. In 1944 they purchased on contract a motel in Clackamas county, receiving a deed therefor in 1948. The property was conveyed to them as tenants by the entirety. On April 15, 1952, they entered into an executory contract for the sale of this property to Joseph Lessman and wife. The vendees went into possession on the first of May, 1952, and from thenceforth received all the rents and profits from the property. As of the date of Edward P. Panushka's death, September 27, 1955, the unpaid balance of the purchase price amounted to approximately $25,361.95.

Mrs. Panushka's failure to include in the inventory any part of the unpaid balance properly chargeable to the sale of the real property is explained as reflecting her claim to the whole amount due thereunder as being the sole owner as the surviving member of the tenancy by the entirety in the real property.

Plaintiff brought this action for a declaratory judgment to determine the estate's interest, if any, in the unpaid balance under the contract for the sale of the real property. It is his contention that the interest of his stepmother is that of a tenant in common as to all money payable under the contract as of the date of his father's death; and as such not entitled to a survivorship interest in the same.

The trial court held Mrs. Panushka, in her personal capacity, had no survivorship interest therein but held only as a tenant in common and the other half interest was an asset of the decedent's estate. From that decree the widow has appealed.

The defendant's sole assignment of error is that

the court erred in extending the doctrine of equitable conversion so, as she says, to destroy a tenancy by the entirety.

It poses the following questions for resolution in this court: (1) Was the doctrine of equitable conversion properly applied; and (2) Did the vendors intend to create a survivorship interest in the proceeds to be derived from the sale?

We have no decisions passing directly upon the questions here involved, and to our surprise find few in other jurisdictions.

■■ At the very outset of our consideration of the problems we are presented with two propositions of law in this state, long and well settled. The first concerns our fidelity to the doctrine of equitable conversion as applied to contracts for the purchase and sale of realty. The second is the well-established rule in this state declaring against estates by the entirety in personalty.

■ Because of its important relation to the instant matter, we deem it in order to restate the doctrine of equitable conversion as it has been recognized and applied in a long line of previous cases. In equity a binding and enforceable contract for the sale and purchase of real estate is recognized for most purposes in this court, as well as in other jurisdictions, as if specifically executed and performed. This concept is derived from the maxim that equity considers as done that which was agreed to be done.

■■ An equitable conversion, therefore, takes place when a contract for the sale of real property becomes binding upon the parties. Thenceforth, the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price. Upon the execution of the contract,

the two contracting parties change positions. The purchaser's interest is "land", and the right and interest conferred by the contract upon the vendor is "personal property," i.e., ownership of the right to receive the purchase money. The naked legal title, which the vendor holds in trust as security for the payment of the purchase money, descends to his heirs to be held by them for the benefit of the purchaser, but the vendor has no *interest* in the *land* which is subject to descent. Upon the vendor's death, his interest in the purchase money passes to his personal representative as personalty, and is distributable among the deceased vendor's next of kin. In short, as a result of the equitable conversion, the vendor holds an encumbered legal title, charged with the equitable interest of the purchaser, which is subject to be defeated by the purchaser's performance of the contract but so long as the contract remains executory, no title to the land is conveyed in law to the purchaser. Subsequent holders of the legal title with notice are likewise treated as trustees for the purchaser, as are heirs and devisees. This trust cannot be terminated either by the vendor or by anyone, with notice of the trust, claiming under, by or through the vendor, except for a breach by the purchaser of the conditions of the contract. The purchaser is called, by some courts, the trustee of the purchase money for the vendor. Other courts, adhering in strict theory, do not say "trustee," but designate the purchaser a contracting party bound by an obligation to pay the vendor or his personal representative money for the land purchased. *Burkhart v. Howard* (1886), 14 Or 39, 44, 12 P 79; *Walker v. Goldsmith,* 14 Or 125, 137, 12 P 537; *Sayre v. Mohney,* 30 Or 238, 242, 47 P 197; *Sievers v. Brown,* 34 Or 454, 56 P 171; *Collins v. Creason,* 55

Or 524, 529, 106 P 445; *Re Estate of Denning,* 112 Or 621, 626, 628, 229 P 912; *Lea v. Blokland,* 122 Or 230, 244, 257 P 801; *Harder v. City of Springfield,* 192 Or 676, 686, 236 P2d 432; *Brown v. Sec. Sav. & Trust Co.,* 140 Or 615, 620, 14 P2d 1107; *City of Reedsport v. Hubbard,* 202 Or 370, 390, 274 P2d 248; *Reynolds Aluminum Co. v. Multnomah County,* 206 Or 602, 617, 287 P2d 921, cert denied 350 US 970, 100 L ed 842, 76 SC 437. See, also, 1 Jones, Cyclopedia of Real Property Law, 588-9, 598-9, §§ 400, 407; 18 CJS 48-9, Conversion § 9a; 91 CJS 1009-10, 1015, Vendor & Purchaser § 106; 19 Am Jur 15-16, Equitable Conversion § 15; 55 Am Jur 781, 785-6, Vendor and Purchaser §§ 355, 359; 3 Casner, American Law of Property, 69-71, § 11.26; Walsh, Equity 415, § 86.

■ In the absence of a showing that the parties have manifested an intention that the property should retain its present character, the general rule is that the conversion takes place when the contract is executed by the parties.

19 Am Jur 23, supra, § 28, states the rule as follows: "Where property passes by force of contract, it is generally held that the conversion operates from the execution of the contract." See, also, 18 CJS 51, supra, § 12.

This rule establishing the timing of the conversion as of the execution of the contract has long been followed in Oregon. *Walker v. Goldsmith,* supra (14 Or at 137); *Sheehan v. McKinstry,* 105 Or 473, 483, 210 P 167, 34 ALR 1315; *Re Estate of Denning,* supra (112 Or at 628); *Lea v. Blokland,* supra (122 Or at 244). See, also, *Collins v. Creason,* supra (55 Or at 529); and *City of Reedsport v. Hubbard,* supra (202 Or at 390).

Mr. Pomeroy observes: "No express declaration in

the instrument is needed that land shall be treated as money although not sold, or that money shall be deemed land although not actually laid out in the purchase of land. The only essential requisite is an absolute expression of an intention that the land *shall* be sold and turned into money, or that the money *shall* be expended in the purchase of land." 4 Pomeroy Equity Jurisprudence (5th ed) 473-4 § 1159.

■ A test as to the existence of a conversion under an executory contract is the mutuality of the agreement, the purchaser agreeing to buy and the seller agreeing to sell, thereby vesting either party to such a contract with the right to specific performance. *Re Estate of Denning,* supra (112 Or at 628), and authorities there cited.

"[A]s a general rule it may be stated that the character of the estate at the death of the intestate, as impressed upon it by his act, determines the course of its descent as real property or of its distribution as personal property. * * *" 26A CJS 538, Descent & Distribution § 9.

There is nothing in the Panushka-Lessman contract to warrant staying the application of equitable conversion. It is in no sense unlike the many other contracts of the same kind and purpose which have subjected the property of the vendors to the effects of its operation. The Panushkas thereby voluntarily impressed their land with the equitable character as personalty for the purposes of distribution. This conclusion does not, however, solve our problem. We have yet to find its effect, if any, upon defendant's claim of survivorship interest in the unpaid purchase price.

The second pronouncement of importance in this matter, and earlier alluded to, finds its first state-

ment in the case of *Stout v. Van Zante,* 109 Or 430, 439, 219 P 804, 220 P 414 (1923). There we are taught in Oregon, estates by the entirety do not exist in personal property. In the intervening years this rule has been consistently followed and is now firmly established. *Smith v. Durkee,* 121 Or 86, 91, 254 P 207; *Ganoe v. Ohmart,* 121 Or 116, 125, 254 P 203; *McInnis v. Atlantic Inv. Corp.,* 137 Or 648, 655, 3 P2d 118, 4 P2d 314; *Nunner v. Erickson,* 151 Or 575, 617, 51 P2d 839; *Holman v. Mays,* 154 Or 241, 249, 59 P2d 392; *Alexander v. Alexander,* 154 Or 317, 331, 58 P2d 1265; *Erickson v. Erickson,* 167 Or 1, 20, 115 P2d 172; *Manning v. U. S. Nat. Bank,* 174 Or 118, 131, 148 P2d 255 (1944).

Contracts of the kind presently before us are very familiar instruments with frequent employment in the commerce relating to the purchase and sale of realty. No doubt there have been untold transactions using this form wherein tenants by the entireties have engaged themselves to sell their entirety holdings; yet the instant matter brings to the court for the first time the question of a surviving vendor's interest in the unpaid balances due or to become due thereunder.

At this point, we pause to test the defendant's position with reference to the foregoing propositions of law and her statement concerning the impact of the doctrine of equitable conversion on the title. We revert to the language of her single assignment of error, which, as she claims, consisted of "extending the doctrine of equitable conversion to destroy a tenancy by the entirety." We also note her further statement, "the vendor's interest [in the unpaid balance], after the death of one spouse, *lost its survivorship status."* (Emphasis ours.)

It would appear to us from that statement that

Mrs. Panushka is laboring under a misconception as to the effect of the conversion doctrine when applied. We learn from our earlier statement concerning the doctrine, as derived from the authorities cited, that such a conversion does not operate upon the *legal estate* or title to the land. The legal title from the execution of the contract remains as before, but as such is held in trust by the vendors for the benefit of the vendees. Therefore, the entirety title of the vendors, existing as of the date of the contract, remained intact to and until the date of Mr. Panushka's death, when Mrs. Panushka, as the survivor, took the whole estate at law "not by right of survivorship simply, but by virtue of the grant which vested the entire estate in such grantee." *Stout v. Van Zante,* supra (109 Or at 434).

■ In the instant case, the sales contract did not destroy the legal estate of entirety ownership nor did the doctrine of equitable conversion work such a result. So far as the legal title is concerned, it continued in Mrs. Panushka as her husband's survivor, and she succeeded upon his death to the entire legal title as trustee, previously held by both of them as co-trustees, for the benefit of the purchasers. This she continues to hold until such time as the Lessmans, or their assigns, complete the vendees' obligations under the contract. Meanwhile, Mrs. Panushka will hold the title in trust as security for the vendees' performance. Walsh, Equity 416, § 86.

When defendant says after the death of her spouse the vendors' interest in the unpaid balance lost its survivorship status, she is again mistaken. It is an argument apparently predicated on a belief that once spouses hold land by the entirety, the survivorship characteristic of such estate is by operation of law

impressed upon each succeeding item of property that they may thereafter mutually acquire from the proceeds of the sale of their first holding. This notion is put at rest by the words of Mr. Justice RAND in *Stout v. Van Zante,* supra, at 439:

> "* * * we can find no case in which it has been held that the transaction of taking a note payable jointly to a husband and wife, secured by a mortgage upon land, creates in them a tenancy by the entirety as to the notes, or which holds that upon the death of either the legal interest of the deceased spouse in the note passes to the survivor. In fact, the rule seems to be directly to the contrary: *In re Albrecht, supra; In re Baum,* 121 App. Div. 496 (106 N. Y. Supp. 113); *In re Berry,* 247 Fed. 700; see also note, 8 A. L. R. 1022, subd. 4."

There is a strong analogy between the position of vendors Panushka under their contract for the purchase and sale of land and mortgagees Stout, who took a mortgage from their purchaser as security for the balance of the purchase price (109 Or, supra, 432). This close parallel between the position of a vendor under a purchase and sale contract and a mortgagee under a purchase price mortgage is recognized in 1 Jones, supra, 590, § 402; 55 Am Jur, supra, 781, § 355, and n 19. In *Sievers v. Brown,* supra (34 Or at 457), Mr. Justice MOORE quotes with approval a statement of Jessel, M. R., made in *Lysaght v. Edwards,* 2 Ch Div 499, which bespeaks the same similarity, and which reads:

> "'* * * In other words, the position of the vendor is something between what has been called a naked or bare trustee, or a mere trustee (that is, a person without beneficial interest), and a mortgagee who is not, in equity (any more than a vendor), the owner of the estate, but is, in certain

156

events, entitled to what the unpaid vendor is, viz., possession of the estate, and a charge upon the estate for his purchase money. Their positions are analogous in another way. The unpaid mortgagee has a right to foreclose; that is to say, he has a right to say to the mortgagor, "Either pay me within a limited time, or you lose your estate," * * *. So, although there has been a valid contract of sale, the vendor has a similar right in a court of equity. He has a right to say to the purchaser, "Either pay me the purchase money, or lose the estate." ' * * *."

■ Notwithstanding that joint tenants, unlike tenants by the entirety, may individually sever and destroy the relationship, we also find a sufficient parallel between these two kinds of ownership to warrant attention to cases wherein the courts have applied the doctrine of equitable conversion to contracts for the purchase and sale of realty, wherein the vendors were joint tenants, and its effect upon the unpaid balances due from the vendees. In the recent cases of *Re Estate of Baker* (1956), 247 Iowa 1380, 78 NW2d 863, 64 ALR2d 902, and *Buford v. Dahlke* (1954), 158 Neb 39, 62 NW2d 252, the highest court of these states had that question before it and resolved it in favor of the applicability of equitable conversion and a resultant ownership in the proceeds of the sale by the vendors as tenants in common. See, also, *In re Sprague's Estate* (1953), 244 Iowa 540, 57 NW2d 212, and cases cited in *Buford v. Dahlke,* supra, at 256.

■ As a general rule, when an estate by the entireties is sold by a husband and wife, in the absence of an agreement directing a contrary division, "the proceeds of a sale of real property acquired by them under the same conveyance belong one-half to each." 4 Thompson, Real Property, 356, § 1820. See, also, *Stout v. Van Zante,* supra; *Fogleman v. Shively,* 4

Ind App 197, 30 NE 909; *In re Albrecht,* 136 NY 91, 32 NE 632, 633, 18 LRA 329. We have long been in accord with that rule. In *Marchand v. Marchand,* 137 Or 444, 3 P2d 128, we said, at page 449: "While an estate by the entirety exists the husband and wife have an equal interest and when they voluntarily join in its disposal, the net proceeds should be equally divided."

Thus we find the law impresses a different character of ownership in the proceeds resulting from the sale of an entirety holding, namely, that of a tenancy in common as between the spouses. If Mr. and Mrs. Panushka had in the lifetimes of both sold their motel for cash, or had received full payment due on the Lessman contract, or had, as the Stouts in *Stout v. Van Zante,* supra, sold the motel for part cash with notes and mortgage back to secure the balance, notes nevertheless being payable to both of them, such cash and notes would be owned by them as tenants in common, in the absence of an express agreement of survivorship between them. In effect, it would be the identical legal result that Mrs. Panushka seeks to avoid here.

If, as we have said, the owners of an entirety estate take an equal interest in the proceeds of a sale (*Marchand v. Marchand,* supra), and this is true whether sold on contract or notes are accepted as a part of the purchase price (*Stout v. Van Zante,* supra), how then can we now consistently say, if the Panushkas own the avails of a sale of their entirety interest as tenants in common during their joint lives, that the surviving spouse takes the whole of any unpaid balance remaining on the death of the other, when there is no clear expression of their intent that such a survivorship shall result? The question attains

additional pertinency when we remember. *In re Estate of Denning,* supra, teaches us that there is no reconversion upon the death of a vendor (112 Or at 629). The defendant supplies us with no persuasive answer. We are satisfied that in the light of our previous decisions that there is none justifying the complex legal transmutations that defendant's thesis would require; that is, first from a tenancy by the entirety in real property to a tenancy in common in personalty, thence to a survivorship interest in the whole of the unpaid purchase price.

■ The defendant contends, and we agree, that the doctrine of equitable conversion will not be invoked when it is evident that the results would be contrary to the intention of the parties. If the vendor's intention is not stated, it must be deduced from the whole instrument and an alternative undisclosed intention cannot be substituted. 19 Am Jur 4, 5, Equitable Conversion §§ 4, 5.

*In Re Edwards' Estate,* 140 Or 431, 14 P2d 274, where the court was required to construe a joint banking deposit contract entered into between a husband and wife, we said at 446:

> "The intent of the depositors being always the controlling factor, we know of no reason why the contract of the parties should not be given full effect. Where no evidence of intent is available except the form of the deposit, that must control. But when the intention is evidenced by a written agreement the question of intention ceases to be an issue and the courts are bound by the agreement. * * *"

But where a survivorship in the proceeds is intended, it must be "affirmatively created by express words." *Manning v. U. S. National Bank,* supra (174 Or at 128); *Erickson v. Erickson,* supra.

We have examined the instant contract with care. All parts of it are free from ambiguity. We find nothing therein, express or implied, to sustain defendant's contentions as to the vendors' intent to impress upon the avails from a sale a right of survivorship in such funds.

To now find that such a survivorship can be created, other than by express words in the contract of sale or in some related document, and rely only on the original deed to the Panushkas would mark a departure from our previous decisions and the general rule above noticed and followed in *Marchand v. Marchand, supra.* See, also, *Ganoe v. Ohmart, supra.* Moreover, to imply that the vendors intended to have an estate of survivorship impressed upon the proceeds of the sale with no more than the language of the deed as justification for such conclusion might, in the absence of evidence to the contrary, abrogate a subsequently conceived desire by the entirety owners to thereafter hold the proceeds as tenants in common; a conclusion more realistic and probable when viewed in the light of the foregoing rules.

The defendant represents that: "There is not a word in the contract that indicates anything of the kind [a conversion defeating a survivorship right in the proceeds]."

In general, the instant contract is well written and indicates that it was probably drawn by one learned in the law. It follows in form those commonly used in transactions of that kind, except in one particular, and in that respect, if given weight, militates against defendant's representations as to the intent of the parties. Its closing clause is the familiar one binding the respective parties "their *heirs* and assigns" to all the covenants and agreements therein contained.

(Emphasis ours) The particular in which it departs from more familiar forms is found in three other places where it refers to the vendors' heirs and assigns. These we note in the margin below.[①] Under the circumstances, it cannot well be urged by the defendant widow that it was the intent of herself and husband that the proceeds of the sale were to accrue in their entirety to the surviving spouse. If that were true, there would be no necessity of binding, as they have done, the heirs of the vendors. See *Re Baker's Estate,* supra (64 ALR2d at 909). But we find it unnecessary to rely upon the foregoing matter in the contract to support our final conclusions. These we rest upon well established rules of law. We refer to the use of the word "heirs" in the contract merely to indicate that defendant is in error when she speaks of the vendors' intentions respecting an estate of survivorship in the proceeds of the sale.

There is no inequity or resulting hardship when tenants by the entirety together agree to sell and, by use of the kind of contract they employed, mutually agreed, so to speak, to convert their realty into personalty. This is so especially when, if they had so desired, they could have preserved the grand incident of survivorship by appropriate clauses in the contract expressly indicating such intent, or, indeed, in a collateral instrument made between them. This court has long since pointed the way to the accomplishment of such result by impressing the funds with the character of a joint tenancy therein, thus preserving an estate of survivorship in the vendors. *Manning v.*

---

① The words "first party" are used to designate both vendors. The phrases referred to above are: (1) "the party of the first part hereby agree for themselves and *their heirs,* * * * to sell * * *"; (2) "The party of the first part, *their heirs* * * * will upon full payment * * *make, execute * * *"; and (3) "the party of the first part, *their heirs* * * * may declare the whole of the unpaid * * * purchase price immediately due * * *." (Emphasis ours).

*U. S. National Bank,* supra, at 131, attests this possibility. See, also, *Erickson v. Erickson,* supra; *Stout v. Van Zante,* supra, at p 438; and *Beach v. Holland,* 172 Or 396, 415, 142 P2d 990, 149 ALR 866.

Diligence of counsel and our own research has failed to discover but two jurisdictions wherein the courts have spoken to questions like those confronting us here; that is, involving executory contracts for the sale of realty in which the vendors hold titles by the entireties and defining their respective interests in the purchase money after the death of one spouse. In Michigan and New York will be found two cases producing a result contrary to the theory of ownership in common. These cases from the latter two jurisdictions are the source of the defendant's chief reliance. The Michigan case is *Detroit & Security Trust Co. v. Kramer,* 247 Mich 468, 226 NW 234 (1929); the one from New York, *In re Maguire's Estate,* 296 NYS 528, 251 App Div 337 (1937). Upon examination the inapplicability of these cases as authority here is readily apparent.

In *Detroit & Security Trust Co. v. Kramer,* supra, the surviving husband proceeded to receive and retain as his own the payments made by the purchaser after his wife's death. The plaintiff trust company, as her administrator, brought suit against the husband on the theory that under the doctrine of equitable conversion the vendors were the owners of the unpaid purchase price as tenants in common. On appeal, the Michigan Supreme Court held adversely to the trust company and in favor of the defendant husband.

*In Kramer,* supra, the court advances the following as the apparent prime reason for holding against applying an equitable conversion to the Kramer sales

contract, saying: "We think it conclusively appears in this record that Mr. and Mrs. Kramer so arranged their respective properties that in effect it amounted to a *contractual undertaking* that each should take and hold a right of survivorship in the other's property." (Emphasis ours.) (226 NW, supra, at 235). We find ourselves in harmony with the general proposition that the Kramers, or the Panushkas in the case at bar, might have entered into a contract whereby the surviving spouse would have succeeded to complete ownership of the unpaid balance if they had stipulated that each vendor should have a right of survivorship therein. The possibility of this has already been noticed in *Manning. v. U. S. National Bank,* supra, at 131; *Erickson v. Erickson,* supra, at 20; *Beach v. Holland,* supra, at 415. The Kramer case is additional authority for the proposition that the parties might have achieved a survivorship interest in personal property by contract (226 NW, supra, at 235). However, the court, in Kramer, supplies us with no reference to evidence which supports the "conclusive" appearance of a "contractual undertaking that each [spouse] should take and hold a right of survivorship in the other's property."

The Michigan court also claimed that the doctrine of equitable conversion, if applied to contracts for the sale of lands held by the entireties, would lead to results that "would seriously impair the title to every parcel of real estate which has been thus conveyed." (226 NW, supra, at 235.) It gives three reasons intended to fortify this conclusion. It is sufficient to say that each reason is contrary to universally accepted concepts of a title by the entireties and the application of any one of them would not have a serious, or any, impact upon titles previously con-

veyed. This is equally true in Oregon where our own decisions are contrary to the legal implications predicted by the Michigan court.

In *In re Maguire's Estate,* supra, the Maguires, husband and wife, owned a parcel of real property by the entireties. On February 25, 1929, they entered into a contract of sale at which time they received a deposit of $1,000. The balance was to be paid "at the closing, set for April 1, 1929," (about 35 days later). On March 8, 1929, the wife died intestate, leaving her husband and children surviving. On April 2, 1929, the widower executed and delivered a deed to the purchaser and received and retained as his own the balance of the purchase price. The administratrix of the wife's estate made claim for one-half of the proceeds.

The court, saying, while it is the general rule that an equitable conversion results from such a contract, "* * * the rule does not obtain under the circumstances disclosed by this record." The circumstances controlling the court's judgment are revealed in the following statement:

"The conversion, if any, takes place only when it is the duty of the contracting party to act. In the instant case the act to be done was the execution and delivery of the deed on April 1, 1929." (296 NYS at 531.)

Laying aside the patent absurdity that the conversion, if any, takes place at the time of delivery of the deed, we find that the New York concept as to the timing of the conversion is contrary to the general rule. See 19 Am Jur, § 28, p 23, supra; 18 CJS, § 12, p 51, supra.

By defendant's concession that in Oregon an equitable conversion takes place upon the execution of the

contract, she destroys Maguire as support for her position in this appeal.

We are convinced that the logic and reason of our former decisions sustain our conclusion that the doctrine of equitable conversion was properly applied to the Panushka-Lessman contract as of the time of its execution, resulting in their ownership as tenants in common as to the purchase price; that there is no evidence of a mutual intention on the part of the Panushkas to vest the surviving spouse with a right to claim as sole owner the unpaid portion of the sales price. Mrs. Panushka, under the circumstances, is the owner of an undivided one-half interest therein, and the estate of Mr. Panushka is the owner of the other half.

Affirmed.

O'CONNELL, J., dissenting.

Inasmuch as ORS 93.240 provides that the surviving spouse is entitled to the unpaid purchase money under circumstances such as we have here, the rule adopted by the majority of the court will not affect future transactions. But the rule does apply to all past land sale contracts executed by husband and wife where provision has not been made for the right to the proceeds upon the death of one of the sellers. Undoubtedly there are many such contracts and the injustice which will be worked by the rule adopted by the court is likely to be felt by a substantial number of our citizens. For this reason, I venture to express my conviction that the result reached in the present case is not only unjust, but that it is arrived at through the application of legal principles which are not apposite.

I shall state my position briefly because I feel that with ORS 93.240 controlling contracts entered

into after its enactment there is little chance that what I might say more specifically would influence the court to change its stand in a future case unaffected by the statute. A detailed criticism of the view adopted by the majority can be found in the law journals. Comment, 37 Colum L Rev 1023 (1938); Note, 41 Cornell L Q 154 (1955); Note, 46 Yale L J 1077 (1937). See, Comment, 7 Brooklyn L Rev 256 (1937); Comment, 50 Harv L Rev 842 (1937).

I begin with the assumption that in most instances in which a husband and wife take real property as tenants by the entirety they do so with the object of providing for survivorship upon the death of one of them. The important fact to notice is that ordinarily the arrangement is consciously related to the death of the grantee spouses; it is a modest form of estate planning understood by most people. The nature of the interest which each is to have in the event that the land is sold when both spouses are living is not ordinarily a matter of concern to the parties when the entirety estate is created. It is likely that the rule in this state recognizing that the proceeds from the sale of an estate by the entireties inures to the husband and wife as tenants in common comports with the usual understanding of laymen. If the proceeds come to them during their joint lives ordinarily there would be no reason for them to regard such proceeds any differently than other cash held by them without provision for survivorship. Where there is an outright sale by husband and wife upon a security basis, the grantors taking a note for the unpaid balance of the purchase price, their purpose is not quite so clear. *In re Bramberry's Estate,* 156 Pa 628, 27 A 405 (1893). See: *Ciconte v. Barba,* 19 Del Ch 6, 161 A 925 (1932). It can be reasoned that since the

estate sold was held under a survivorship arrange-
ment the unpaid balance was intended to be subject
to the same arrangement. It has been so held. *Allen
v. Tate,* 58 Miss 585 (1881); *In re Bramberry's
Estate,* supra. See: *Ciconte v. Barba,* supra; 41 Cor-
nell L Q, op cit supra at page 155. A contrary result
was reached in *Stout v. Van Zante,* 109 Or 430, 219 P
804, 220 P 414 (1923). I think that *Allen v. Tate,*
supra, and *In re Bramberry's Estate,* supra, represent
the better view. But we need not disturb the holding
in the Stout case in deciding the present case in
favor of the surviving spouse. Here the vendors con-
tinued to hold their estate by the entireties up to the
time of the death of Edward Panushka, and the in-
terest of the surviving spouse in the proceeds paid
after the death of her husband can be predicated upon
her sole ownership of the land subject to the vendee's
interest. If the vendors had not entered into a con-
tract for the sale of their interests, the death of Ed-
ward Panushka would have left his surviving spouse
with the entire estate. How does the contract for the
sale of the land work a change in this right of sur-
vivorship incident to an estate by the entirety? The
majority of the court takes the position that the doc-
trine of equitable conversion forces the conclusion.
That is the fundamental error upon which the
majority builds its opinion. The doctrine of equitable
conversion originated out of a need to adjust the
traditional categories of property interests so that a
just result could be reached through the application
of accepted principles of law. The doctrine does not
demand that contracts for the sale of land shall in all
instances convert the interest of the vendor from real
to personal property.

"When we speak of conversion we are not de-

scribing a condition of the property for all purposes with respect to everybody but are giving a name to a situation resulting from the application of equitable doctrines to a state of facts between certain parties." Pound, The Progress of the Law 1918-1919, 33 Harv L Rev 813 at 831 (1920)

To the same effect see Stone, Equitable Conversion by Contract, 13 Colum L Rev 369 (1913). *Commissioner of Internal Revenue v. Hart,* 76 F2d 864 (6th Cir 1935); *Detroit & Security Trust Co. v. Kramer,* 247 Mich 468, 226 NW 234 (1929). The fiction is indulged in so that an equitable result may be reached; it is not appropriately used if it defeats the intention of the parties. Numerous cases have recognized this principle. Thus, in *Sands v. Church of Ascension, etc.,* 181 Md 536, 30 A2d 771 (1943) the court said:

"* * * The basis of the doctrine, under which real estate is considered for certain purposes as personal property, and personal property as real estate, is the intention of the party creating a right in the property. The doctrine is not a fixed rule of law, but proceeds upon equitable principles which take into account the result which its application will accomplish. Anderson v. Yaworski, 120 Conn. 390, 181 A. 205, 101 A.L.R. 1232." 30 A2d at page 776.

And in *National Bank of Topeka v. Saia,* 154 Kan 740, 121 P2d 251, 138 ALR 1290 (1942), the following statement is made:

"* * * What necessity is there then for asking a court of equity to invoke the equitable doctrine of conversion? That doctrine is a fiction invented by courts of equity to promote justice and, as a fiction, it is applied only for the purpose of doing justice. The doctrine is not applicable under all circumstances. It does not exist as a matter of right but exists only when necessity and justice require that it be invoked." 121 P2d at page 254.

For other cases see 1 Tiffany on Real Property (3d ed), § 296 and supplement.

Consistent with the foregoing principle, it has been held that the proceeds from the surplus in excess of the mortgage debt upon a foreclosure sale of land held by the entirety is regarded as being held by the entirety. *Stretz v. Zolkoski,* 118 Misc 806, 195 NYS 46 (1922), *Germania Savings Bank v. Jung,* 64 Hun 11, 18 NYS 709 (1892); that the proceeds of a condemnation award of land held by the entirety go to the surviving tenant by the entirety, *In re 115th and Vistula Aves., Etc.,* 137 Misc 358, 242 NYS 6 (1930); and that the ownership of the proceeds payable under a fire insurance policy covering a building held by the entirety vests in the survivor of the tenancy, *Scutella v. County Fire Ins. Co. of Philadelphia,* 231 App Div 343, 247 NYS 689 (1931).

The majority applies the doctrine without inquiry as to whether its application will defeat or carry out the intention of the parties; the conversion of real into personal property is regarded as an inevitable conclusion once it is determined that a contract for the sale of land was entered into. We should not misapply an equitable principle to produce an inequitable result.

There were no circumstances in the instant case suggesting the need for indulging in the fiction that the real property interest of Edward and Bess Panushka was personal property. As a matter of fact, the circumstances point to the probability that the use of the fiction operates to defeat the intention of the vendors. It is reasonable to assume that the vendors intended the survivorship feature which characterized their interest in the land to continue as to the unpaid purchase money falling due after the

death of one of the spouses. If that assumption is sound, it is no answer to say that they *might* have had some other intention with respect to the proceeds. We should adopt the rule which conforms to the vendors' intent in the majority of cases. We have no data which proves that husbands and wives normally wish to have the unpaid proceeds accrue to the survivor, but I believe that the assumption that they so intend is a reasonable one. As stated above, the creation of estates by the entirety is usually a part of a plan for the disposition of property upon death. It is not reasonable to assume that the parties intended that the mere *alteration in the form of the property should* work a change in their basic dispositive plan. Note, 41 Cornell L Q 154 (1955).

Our refusal to apply the doctrine of equitable conversion to the facts of the present case would not in any way weaken our previous cases recognizing the doctrine. In the absence of circumstances indicating a contrary intent, it is not unreasonable to proceed on the theory that the vendor intends that his interest in the land sold under contract should take the form of the property which he has bargained to receive. This, I take it, is the basis for the application of the doctrine in the cases previously decided by this court. But where there are circumstances indicating a contrary intent our cases do not demand that we convert real property into personal property. Where tenants by the entirety sell their interests through a contract of sale I think that there is a firm basis for implying an intent that until the proceeds are received the respective interests of the husband and wife should continue to be characterized by the incident of survivorship. This appears to be the view taken by all those who have written extra-judicial comments on the prob-

lem. See notes cited above. The draftsman of ORS 93.240 apparently made the same assumption as evidenced by the statutory dictum that the act is "declaratory of existing law."

Nor is the view that survivorship operates in circumstances such as we have here incompatible with the rule that a tenancy by the entirety in personal property cannot be created in Oregon. If the doctrine of equitable conversion is not applied then, obviously, the interest of the spouses continues to be real property and we need not concern ourselves with the rule relating to tenancies by the entirety in personal property.

On the other hand, if we treat the spouse's interest as personal property the right of survivorship can readily be implied from the fact that the land sold was held with the incident of survivorship. Our cases such as *Manning v. U. S. National Bank,* 174 Or 118, 148 P2d 255, 153 ALR 922 (1944) and *Erickson v. Erickson,* 167 Or 1, 115 P2d 172 (1941), recognize that the right of survivorship can be created by the agreement of the parties. The agreement need not be express; it may be implied. There is no reason why we should not imply it here. There is no policy in this state against the creation of survivorship interests in personal property. We have the rule precluding the creation of tenancies by the entirety merely because it was felt that the common law must be followed in the absence of a statute providing differently. See: Note, 10 Ore L Rev 388 (1931); Note, 3 Ore L Rev 163 (1923).

In *Stout v. Van Zante,* supra, the court recognized that if an agreement had been entered into by the parties a survivorship interest could be created. It is my opinion that the court in that case erred in not

finding an implied agreement from the fact that the estate sold was held by the entireties. But, as I have indicated above, the Stout case need not be overruled because the present case is distinguishable in that the vendors *continued to hold as tenants by the entirety,* and from that fact an implication of survivorship in the proceeds can be made. Nor will our recognition of a right of survivorship in the proceeds disturb our previous cases such as *Marchand v. Marchand,* 137 Or 444, 3 P2d 128 (1931), where it was held that the proceeds received by tenants by the entirety *during their joint* lives is held by them as tenants in common. As explained above, the implication of survivorship in the proceeds arises from the fact that the vendors have made a plan for the vesting of their respective interest *on the death* of one of them. Proceeds received during their joint lives do not fall within that plan.

We can, then, without disturbing our previous cases recognize the surviving spouse's right to the proceeds in this case. I think that we should do so by adopting the view expressed in the better decided cases. *Commissioner of Internal Revenue v. Hart,* supra; *In re Estate of Jogminas,* 246 Ill App 518 (1927); *Hewitt v. Biege,* 183 Kan 352, 327 P2d 872 (1958); *Foy v. King,* 248 Mich 650, 227 NW 541 (1929); *Detroit & Security Trust Co. v. Kramer,* supra; *Allen v. Tate,* supra; *In re Keyworth's Estate,* 13 Misc2d 502, 180 NYS2d 37 (1958); *In re De Witt's Will,* 202 Misc 167, 114 NYS2d 81 (1952); *McArthur v. Weaver,* 129 App Div 743, 113 NYS 1095 (1909); *In re Bramberry's Estate,* supra.

The judgment should be reversed.