PERRY ET AL *v.* STATE TAX COMMISSION

and

CITY OF PORTLAND and PORTLAND
CENTER DEVELOPMENT CO.

Charles S. Evans and Willis West, Portland, argued the cause and filed a brief for plaintiffs.

Ira W. Jones, Assistant Attorney General, Salem, and Maurice O. Georges, Portland and Oliver Norville, Portland, argued the cause for defendants and submitted a brief.

Decision for defendants rendered January 6, 1966.

EDWARD H. HOWELL, Judge.

Plaintiffs filed this suit to set aside the defendant tax commission's order directing plaintiffs to strike

certain real property from the 1963-64 Multnomah County assessment roll.

The City of Portland, acting through the Portland Development Commission (hereinafter referred to as the Development Commission), which was the Urban Renewal Agency for the City, is undertaking an urban renewal project known as the South Auditorium Urban Renewal Project. In carrying out this project the City became the owner of certain real property and determined to dispose of the project land by competitive bids for redevelopment of the area. The bid of Portland Center Redevelopment Corporation (hereinafter called the Redeveloper) was accepted. The contract between the Development Commission and the Redeveloper provided for redevelopment of the area in three phases. The total price to be paid by the Redeveloper was $4,100,000 and $410,000 was paid as security at the time of the execution of the contract on April 8, 1963. (The Redeveloper assigned its interest in the contract to Portland Center Development Co., a partnership, the Intervenor herein.)

The Multnomah County Assessor placed part of the lands on the assessment roll for 1963-64. The Development Commission and the Redeveloper appealed to the defendant commission. The commission concluded that the property was not subject to real property taxes and ordered it stricken from the assessment roll. Plaintiffs then filed this suit in this court.

The plaintiffs contend the land is subject to real property taxes under the provisions of ORS 307.100. This statute provides:

"Lands held under a contract for the purchase thereof, belonging to the state or any institution or department thereof, or to any county, municipal

corporation or political subdivision of the state, together with the improvements thereon, shall be considered, for all purposes of taxation, as the real property of the person so holding the same. No deed to such lands shall be executed until all taxes and municipal charges are fully paid thereon. Any agreement whereby the lessee, vendee or tenant of any such lands may have any payment made or to be made by him applied on an agreed consideration for the purchase of such lands is a contract for the purchase thereof, within the meaning of this section."

As of January 1, 1963, the property was owned by the Development Commission as the Urban Renewal Agency, and exempt from taxation. ORS 311.410(4) provides in substance that if exempt property is transferred between January 1 and June 30 to nonexempt property it shall become taxable. Subsection (1) of the same statute also provides that real property exempt from taxation on July 1 shall remain exempt for the ensuing fiscal year.

The main thrust of the plaintiffs' argument is that the execution of the contract of April 8, 1963, between the Development Commission and the Redeveloper, plus the payment of the security deposit, constituted a vendor-purchaser land sale contract with the Redeveloper becoming the owner and holder of the land under the doctrine of equitable conversion. In *Panushka v. Panushka,* 221 Or 145, 149, 349 P2d 450 (1960), the court described an equitable conversion as follows:

"An equitable conversion, therefore, takes place when a contract for the sale of real property becomes binding upon the parties. Thenceforth, the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price. Upon the execution of the con-

tract, the two contracting parties change positions. The purchaser's interest is 'land', and the right and interest conferred by the contract upon the vendor is 'personal property,' i.e., ownership of the right to receive the purchase money. * * *"

The court also set forth a test of an equitable conversion to be:

"A test as to the existence of a conversion under an executory contract is the mutuality of the agreement, the purchaser agreeing to buy and the seller agreeing to sell, *thereby vesting either party to such a contract with the right to specific performance.* * * *" 221 Or at 152. (Emphasis supplied.)

The Tax Commission, the Development Commission and the Redeveloper all argue that the contract of April 8, 1963, is a special type of contract, that neither party could have maintained a suit for specific performance under the contract as the conditions existed on July 1, 1963, because of certain outstanding conditions precedent, and that the lands were not being "held" by the Redeveloper under the contract as required by ORS 307.100.

Before discussing the contract it should be noted that the transfer of the real property and the redevelopment of the area were to be consummated in three stages or phases. According to the testimony the redevelopment of the land was divided into phases because it was impossible to determine exactly how fast the local market could absorb the apartments, commercial buildings and other improvements to be constructed by the Redeveloper. Approximately one-third of the land was to be conveyed to the Redeveloper to start phase one of the contract.

The contract contained certain conditions precedent to be performed by both parties before title to the

property could be conveyed to the Redeveloper and phase one started.

The Development Commission was required to prepare the property for the Redeveloper by removing the existing buildings, sidewalks, utility lines and similar structures. As of July 1, 1963, the Development Commission had not completed the required site improvements and the Redeveloper could not proceed. The Development Commission was responsible for any necessary rezoning of the land. Some rezoning was required to carry out the redevelopment plans but this was not completed until December, 1963. The contract also required the Redeveloper to submit preliminary architectural and site plans to the Development Commission for its approval. These were not submitted until June, 1964. The Redeveloper was required to furnish evidence that it had the necessary equity capital and mortgage commitments for financing the construction of the buildings and this evidence was not submitted until August or September, 1964.

The Redeveloper did not secure title and go into possession of the phase one land until September, 1964. The delay on all sides was generally attributed to the size and complexity of the project.

According to *McClintock, Equity,* 287 (2d ed, 1948), "Where there is a condition precedent to the binding effect of the contract, the vendor-purchaser relationship does not exist until that condition has been performed, and conversion, therefore, does not take place." See also *Deitz v. Stephenson,* 51 Or 593, 605, 95 P 803 (1908).

■ As of July 1, 1963, under the situation then existing, neither party could have maintained a suit for specific performance of the April 8, 1963, contract be-

cause of the aforementioned conditions precedent that were still outstanding.

The word "held" as used in ORS 307.100 has not been judicially defined in Oregon. However, the Oregon Supreme Court in *South Coast Lbr. v. Tax Com.*, 240 Or 636, 403 P2d 714 (1965), had occasion to discuss the meaning of "held." The case involved the assessment of personal property taxes on logs being purchased by the plaintiff from the United States Forest Service. ORS 307.050 provided in effect that real and personal property of the United States held under a contract for sale shall be assessed and taxed as the property of the purchaser. The court held that the property was assessable under ORS 308.105 which provides that personal property may be assessed in the name of the owner or person having possession or control thereof. The court stated:

"Since ORS 308.105 provides for the taxation of personal property in all cases in which the property is possessed or controlled, the term 'held' in ORS 307.050 must have been intended to describe merely the interest of a contract purchaser who had neither possession nor control of the property being purchased." 240 Or at 639.

In a footnote the court said:

"The word 'held' is commonly used to describe the ownership of an interest in property neither possessed nor controlled by the owner. Commissioner of Internal Rev. v. C. A. Sporl & Co., 118 F2d 283 (5th Cir 1941); Ebert v. State of California, 33 Cal2d 502, 202 P2d 1022 (1949)."

The two cases cited in the above footnote involved facts where the "holder" of the personal property did not have possession or control of the property but did have the *right* to possess or control. The *Ebert* case

involved funds from the estate of a decedent. As no heirs appeared the statute required the funds to be delivered to the State Treasurer who was required to hold such funds for five years during which time any heirs could appear and claim the estate. The property was not delivered to the State Treasurer but was held by the County Treasurer for over five years before transfer to the State Treasurer. Shortly thereafter certain heirs appeared and claimed the estate. The Supreme Court of California held the heirs were barred from their claim because it was not filed within the five-year period. The Court decided the State Treasurer "held" the property although not in actual possession and stated:

> "* * * it is more reasonable to conclude that in using the term 'held' the Legislature meant the *right of the State Treasurer to claim possession* of the property on behalf of the State, * * *." 202 P2d at 1024. (Emphasis supplied.)

The other case mentioned in the footnote, *Commissioner of Internal Revenue v. C. A. Sporl & Co., supra,* involved the question of whether corporate bonds were "held" by the taxpayer for the two years necessary to qualify as capital assets. The bonds were received as a result of a contract settling an indebtedness between the taxpayer and the debtor. The bonds were not delivered to the taxpayer at the time of the execution of the settlement contract and the Commissioner of Internal Revenue contended the taxpayer had not held them for the required two years. The court held in favor of the taxpayer and found that "the rights of the parties became fixed" as of the date of the settlement contract even though the bonds were not actually delivered until several months later. It is clear from the facts that the taxpayer had the right

to possession of the bonds at the time of the execution of the settlement contract although he did not have actual possession or control of them until later.

■ In the instant case the Redeveloper did not have possession or even the right to possession of the real property as of July 1, 1963, because of nonperformance on both sides of the conditions precedent agreed upon by the parties. Because the Redeveloper had neither possession or the right to possession of the property in question as of July 1, 1963, it did not "hold" the property under ORS 307.100 and such property is not subject to real property taxes for 1963.